**STATE of Alaska, Petitioner,**

v.

**Michael CHRYST, Respondent.**

**No. A–3058.**

Court of Appeals of Alaska.

June 1, 1990.

Steven H. Morrissett, Dist. Atty., Palmer, and Douglas B. Baily, Atty. Gen., Juneau, for petitioner.

James H. McComas, Anchorage, for respondent.

Before BRYNER, C.J., COATS and SINGLETON, JJ.

## OPINION

COATS, Judge.

In October 1988, United States postal authorities executed several warrants and discovered that packages of marijuana were being sent through the mail. Based on information from the postal authorities, Alaska State Trooper Michael Stickler suspected Michael Chryst of growing marijuana and sending it through the mail. In gathering information to secure a search warrant to search Chryst's property, Stickler contacted the local utility company, Matanuska Electric Association (MEA). Stickler asked an MEA employee to give him power consumption and address information on all accounts which were listed under Chryst's name. The MEA employee gave Stickler information about the physical location of two properties where Chryst had electrical service as well as Chryst's electrical usage at these locations. Stickler testified that the unusually high summer electrical use on one of the properties and the pattern of usage were indicative of a marijuana-growing operation. Based upon this information, Stickler obtained a search warrant to search Chryst's house in Big Lake. The police discovered evidence of a large marijuana-growing operation at that location. The police then obtained a second warrant to search Chryst's residence in Wasilla. In the second search, the troopers discovered packaged marijuana.

Chryst was indicted in February 1989 on several counts of misconduct involving a controlled substance. Chryst filed several motions to suppress. Two of the trial court's rulings on Chryst's motion to suppress are relevant at this time. Superior Court Judge Beverly W. Cutler concluded that the state did not violate Chryst's constitutional right of privacy by obtaining Chryst's electrical usage records from MEA. Judge Cutler pointed out that MEA did not regard this information as confidential. However, Judge Cutler found that the state did violate Chryst's constitutional right to privacy by obtaining Chryst's address. In making this ruling, Judge Cutler relied in part on a written policy of MEA dated July 16, 1985, which Chryst introduced at the suppression hearing. The stated purpose of the MEA policy was to "define the availability of the records of the Association to the membership" and to "provide the members with all information possible about their association." The policy declared that "[t]he names, addresses or telephone numbers of individual members, past and/or present, will not be provided except with the approval of the member or in response to requests by subpoena or court order." The policy also states that "[m]embers of the Association are entitled to access of the membership list for proper corporate purposes, such as for use in connection with the Board of Directors' elections." Judge Cutler concluded that Chryst had a reasonable expectation of privacy with respect to his address information given the MEA policy. She accordingly ordered all evidence which the police obtained as a result of the search warrants suppressed. The state petitioned for review of this ruling. We granted review and now reverse.

Chryst brought his motion to suppress under article 1, section 14 of the Alaska Constitution, which is similar to the fourth amendment of the United States Constitution, and article 1, section 22 of the Alaska Constitution, which does not have an analogous provision in the United States Constitution.[1] In determining whether

1. Alaska Constitution, article 1, section 14 reads:

The right of the people to be secure in their persons, houses and other property, papers,

Chryst's right to privacy was infringed we apply a two-part test: first, whether Chryst exhibited a subjective expectation of privacy; and second, whether society is prepared to recognize that expectation of privacy as reasonable. *Katz v. United States*, 389 U.S. 347, 361, 88 S.Ct. 507, 516, 19 L.Ed.2d 576 (1967) (Harland, J., concurring); *State v. Glass*, 583 P.2d 872, 875 (Alaska 1978).

Different courts have arrived at different conclusions concerning what information is protected by a constitutional right of privacy. The federal position is set forth in *United States v. Miller*, 425 U.S. 435, 440–43, 96 S.Ct. 1619, 1622–24, 48 L.Ed.2d 71 (1976). In that case the United States Supreme Court held that a bank customer had no reasonable expectation of privacy that society was prepared to recognize in financial statements which he had voluntarily turned over to a bank:

> The depositor takes the risk, in revealing his affairs to another, that the information will be conveyed by that person to the Government. This Court has held repeatedly that the Fourth Amendment does not prohibit the obtaining of information revealed to a third party and conveyed by him to Government authorities, even if the information is revealed on the assumption that it will be used only for a limited purpose and the confidence placed in the third party will not be betrayed.

*Id.* at 443, 96 S.Ct. at 1624 (citations omitted). Thus, it does not appear that the United States Supreme Court would recognize Chryst's right to privacy in his name and address which he had "voluntarily" turned over to MEA. However, the federal cases can be distinguished to some degree because the United States Constitution does not contain a special provision such as article 1, section 22 of the Alaska Constitution which specifically protects a right of privacy.

and effects, against unreasonable searches and seizures, shall not be violated. No warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

The states of Washington and California have construed the provisions of their state constitutions which, like Alaska, have a specific provision guaranteeing a right to privacy, to protect some information which customers have given to the utility companies for the purpose of obtaining services. In *People v. Chapman*, 36 Cal.3d 98, 201 Cal.Rptr. 628, 679 P.2d 62 (1984), the Supreme Court of California held that police, acting without a search warrant, could not obtain from the telephone company the name and address of a subscriber who had paid the utility to have an unlisted number. In that case the police suspected that the telephone was being used for illegal off-track betting. *Id.* 201 Cal.Rptr. at 630, 679 P.2d at 64. The court stated:

> [T]he customer's expectation of privacy in information gathered by the company during the regular course of its business must be honored as a reasonable one. That expectation cannot be deemed to have been abandoned because the customer is required to disclose to the telephone company certain information.

*Id.* 201 Cal.Rptr. at 633, 679 P.2d at 67. The court found that the fact that many customers did not seek to keep their identities private did not diminish the privacy rights of those who do. "Since disclosure of a name and address is compulsory in order to obtain this service, the information collected by the company is entitled to protection from warrantless disclosure." *Id.* 201 Cal.Rptr. at 634, 679 P.2d at 68.

The *Chapman* court also rejected the argument that an individual's name and address were not entitled to the same level of protection as more private, personal matters. The court pointed out the name and address of an individual could provide the essential link to complete the "biography" of a person and serve to make the person a target of an official investigation. *Id.* 201 Cal.Rptr. at 634–635, 679 P.2d at 68–69.

Alaska Constitution, article 1, section 22 reads:
The right of the people to privacy is recognized and shall not be infringed. The legislature shall implement this section.

In *State v. Butterworth*, 48 Wash.App. 152, 737 P.2d 1297 (1987), the Washington Court of Appeals followed *Chapman* to reach a similar result. In *Butterworth*, the police had information that Butterworth had a marijuana-growing operation at his residence. The police obtained the address of Butterworth's residence by contacting the telephone company. An employee for the telephone company informed the police that Butterworth had an unlisted number. Nevertheless, the police were able to obtain Butterworth's address and telephone number by making a written request to the telephone company's security department. *Id.* at 1298. The court held that since the police had obtained Butterworth's unpublished telephone number without a warrant, the seizure of the information was unlawful and that a warrant which relied on this information to establish Butterworth's address was also unlawful. *Id.* at 1301.

The majority of courts, though, appear to follow the federal lead in concluding that a person has no reasonable expectation of privacy in his name and address. For instance, in *State v. Smith*, 367 N.W.2d 497 (Minn.1985), the defendant was a suspect in a homicide. The police obtained the defendant's address from the County Bureau of Social Services where the defendant had obtained welfare, and the court refused to suppress evidence from the subsequent search of the defendant's hotel room. *Id.* at 503–05. The Minnesota Supreme Court recognized the fact that a state statute provided that the welfare agency could not give out information such as a street address. *Id.* at 504. However, the court stated:

> If there was a violation of the statute in this case, it was a technical violation which did not subvert the basic purpose of the statute. There can be little doubt that a court order would have been issued on request.
>
> It is also clear that the disclosure did not violate any of defendant's constitutional rights so as to require suppression of the fruits of the search and arrest. Any constitutional right that a person

has to informational privacy clearly does not extend to his address.

*Id.* at 504–05 (citation omitted).

The Minnesota court noted that:

> The main protection offered a welfare recipient by the prohibition on unauthorized disclosure of private data on him, including his address, is the protection from disclosure of information identifying him as a recipient and information which the recipient has a legitimate interest in keeping private. Here, the information was not used by the police to disclose defendant's welfare status to the public but only to establish that defendant was living in a hotel room they wanted to search.

*Id.* at 504 n. 1. Other courts seem to have reached similar conclusions. *Kesler v. State*, 249 Ga. 462, 291 S.E.2d 497, 504 (1982) (no expectation of privacy in telephone toll and billing records because records belong to telephone company, not defendant); *People v. Di Raffaele*, 55 N.Y.2d 234, 448 N.Y.S.2d 448, 451, 433 N.E.2d 513, 516 (1982) (no legitimate expectation of privacy with respect to telephone records).

In his treatise on the fourth amendment, Professor LaFave strongly condemns the decision in *United States v. Miller*, where the Supreme Court held that law enforcement agents could obtain an individual's bank records without a warrant. W. LaFave, *Search and Seizure* § 2.7(c), at 511–17 (2d ed. 1987). However, LaFave also concludes that the Constitution does not prohibit disclosure of a person's name and address:

> Admittedly it cannot be said that all information about a person is private in the Fourth Amendment sense. *Katz* instructs that "[w]hat a person knowingly exposes to the public * * * is not a subject of Fourth Amendment protection," and certainly some of the information which institutions collect in the course of business transactions fits that description. For example, if law enforcement agents were allowed to consult business records which merely revealed a person's name or address or telephone number,

this does not offend any interests protected by the Fourth Amendment. But bank records are another matter, for unquestionably they "can reveal much about a person's activities, associations, and beliefs."

*Id.* at 512–13 (footnotes omitted, elipses original).

■ We agree with Professor LaFave and what appears to be the majority rule that a person's name and address, by themselves, do not constitute information about which a person can have a reasonable expectation of privacy which society is willing to recognize. In *McNutt v. State*, 88 N.M. 162, 538 P.2d 804, 808 (App.1975), *cert. denied*, 88 N.M. 318, 540 P.2d 248 (1975), the court stated:

> The address of most persons appears in many public records: voting registration roles, property assessment roles, motor vehicle registration roles, etc., all of which are open to public inspection. They also usually appear in such places as the telephone directory and city directory which are available to public inspection. We, therefore, hold that an individual's home address is a public fact and that its mere publication, without more, cannot be viewed as an invasion of privacy.

Had the police obtained Chryst's address from his driver's license application, or by checking public property records, there would be little claim that Chryst had a reasonable expectation of privacy from disclosure of his name and address from those sources even though Chryst was required to give that information to exercise his right to drive or own property. The information which is in dispute which MEA gave the police was merely Chryst's name and address. It was information which was available because Chryst was a consumer of a public utility. Few people would regard the fact that they are consumers of the services of a public utility to be private information.[2] We conclude that under the circumstances in this case, Chryst did not have a reasonable expectation of privacy which society is prepared to recognize in his name and address and the locations where he received utility services. We accordingly hold that the superior court erred in concluding to the contrary and in suppressing evidence which the police obtained as the result of obtaining Chryst's addresses from MEA.

The decision of the superior court is REVERSED and the case is REMANDED for further proceedings.

BRYNER, Chief Judge, concurring.

I join in the court's decision but want to emphasize the narrow scope of our holding. We hold only that the reach of the Alaska Constitution's privacy clause stops short of information relating to an individual's residence address when that information is held by a public utility in connection with customer service records that are themselves open for public disclosure and not subject to protection by the right of privacy.

In Chryst's case, M.E.A. elected to treat the residence addresses of its members as confidential. On the other hand, the utility apparently made available to the public records of the services it provided to its members. It seems that the trial court relied heavily on M.E.A.'s disclosure policies to conclude that Chryst's constitutional right to privacy prohibited the disclosure of his address but not the records detailing his electrical consumption at that address. The trial court's reliance on the internal policies adopted by M.E.A., however, is questionable. While M.E.A.'s disclosure policies would certainly be relevant to the issue of Chryst's subjective expectations and might affect Chryst's contractual rights vis-a-vis M.E.A., they cannot determine the scope of the constitutional right to privacy.

Chryst, however, has not, at this stage of his case, challenged the superior court's

---

**2.** The police also obtained information about Chryst's utility usage. However, Judge Cutler ruled that this was public information which the utility gave out freely and that Chryst had no reasonable expectation of privacy in this information. This ruling has not been appealed to this court.

decision that M.E.A. had a right to disclose information relating to the services that it provided him. Consequently, we must assume that aspect of the superior court's ruling to be valid for purposes of deciding the issue presented here: the permissibility of disclosing Chryst's address. Given that Chryst's address was not associated with any other confidential utility records, we have concluded that the privacy clause did not preclude its disclosure.

In my view, it is particularly significant that the two closest cases cited by Chryst appear to support our conclusion. In both *People v. Chapman*, 36 Cal.3d 98, 201 Cal. Rptr. 628, 679 P.2d 62 (1984), and *State v. Butterworth*, 48 Wash.App. 152, 737 P.2d 1297 (1987), a telephone utility's disclosure of a customer's address was held to violate the customer's right to privacy. Both cases, however, involved situations in which the customer's address was associated with an unlisted telephone number. In both cases, the unlisted number was the core information found to be protected by the right to privacy, and the customer's address was deemed protected as a consequence of its relationship to the protected information. Neither case purports to hold that a person's address is in and of itself private information whose disclosure is constitutionally protected, and Chryst cites no cases reaching such a conclusion.

Indeed, in *Chapman*, the California Supreme Court went to considerable lengths to emphasize the significance of the relationship between the customer's address and the privacy of the unlisted number that served as the source for that information. *Chapman*, 679 P.2d at 68–69. The court analogized the situation to that of the attorney-client privilege, which normally does not protect against disclosure of a client's identity, but which does apply in particular circumstances when disclosure would have the effect of revealing client confidences. *Id.* at 69.

Because *Chapman* and *Butterworth* are distinguishable from Chryst's case, it is unnecessary to decide whether we would be inclined to follow them in a case in which a customer's address was revealed by a utility that held the information in connection with other confidential records. My chief concern in writing this separate concurrence is to assure that our decision is not misunderstood as rejecting *Chapman* and *Butterworth* or as suggesting that we would decline to follow those cases in other contexts. The court's opinion should be read as addressing only the narrow factual circumstances involved in this case.