867 P.2d 247

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Robert Pete KLUSS, Defendant–Appellant.**

No. 19835.

Court of Appeals of Idaho.

Dec. 27, 1993.

Petition for Review Denied Feb. 17, 1994.

Harvey Richman, Coeur d'Alene, for appellant.

Larry EchoHawk, Atty. Gen., Richard S. Christensen, Deputy Atty. Gen., Boise, for respondent. Richard S. Christensen argued.

ROGER SWANSTROM, J. Pro Tem.

A jury found Robert Pete Kluss guilty of manufacturing a controlled substance (growing and processing marijuana), I.C. § 37–2732(a)(1)(B); possession of a controlled substance (marijuana) with the intent to deliver, I.C. § 37–2732(a)(1)(B); and possession of marijuana without a tax stamp, I.C. § 63–4207(2). ·Kluss appeals contending (1) that the district court erred in denying his motion to suppress evidence obtained through a search of his house, (2) that the court committed fundamental error by not instructing the jury that the crime of possession with intent to deliver is an included offense of the crime of possession of a controlled substance without a tax stamp; (3) that, when sentencing, the district court improperly considered Kluss's failure to rebut implications made about his apparent source of income; (4) that, in violation of I.C. § 18–301, he was sentenced for two crimes arising from the same acts; (5) that the court abused its sentencing discretion by requiring the three sentences to be served consecutively. For reasons given below, we affirm the conviction and sentences for manufacturing marijuana and possession of marijuana without a tax stamp, but in order to avoid double punishment for the same acts, we vacate the conviction for possession with intent to deliver.

## I. The Factual Background

In April and May 1991, an anonymous informant made a series of phone calls to Walt Richard, a peace officer employed by the Idaho Bureau of Narcotics, Department of Law Enforcement. The caller told officer Richard that Robert Peter Kluss, a resident of Coeur d'Alene, had been growing and selling marijuana for about eight years. The

caller related that he had been in Kluss's house in 1990 where he smelled marijuana, and he believed that Kluss was still growing marijuana plants in the basement using high energy grow lights. The caller admitted that he did not see the grow operation, but he did see Kluss with two pounds of marijuana in 1990 at Kluss's home and that Kluss had told him he made $150,000 in 1990 from the sale of marijuana. The caller said that Kluss had no legitimate employment from which he could have earned such an income.

The caller named two associates of Kluss, saying they were also involved with Kluss in raising or selling marijuana. He said that Kluss had recently helped one of his associates dig a trench between a house and the barn on the associate's property to bury an electric cable which would provide power to an underground "grow room."

The caller said that Kluss was moving part of his growing operation to a rural site Kluss owned where marijuana would be grown in a room beneath a building that Kluss had recently constructed. The caller said that Kluss expected to divert attention from his use of a high amount of electricity at the site by his statements that he was using an arc welder, electric heat and a jacuzzi.

In the course of several calls, the caller gave Richard detailed information about Kluss and his associates, their backgrounds, their vehicles, the location of their properties, and other information which Richard found to be accurate. However, for the most part, the imparted information was available, and was verifiable by Richard, from public records, utility companies, phone directories and his own observations. Therefore, while the imparted information proved to be accurate and useful in Richard's investigation, it was mostly innocuous and contained no inherent verification of the caller's statements about the illegal marijuana growing operations allegedly being conducted by Kluss and his associates. We will discuss later officer Richard's attempts to verify the incriminating statements given by the caller.

Eventually, beginning on June 20, 1991, Richard presented the information he had obtained from the caller and from other sources to a magistrate in Kootenai County who issued a warrant to search Kluss's residence for evidence of an illegal marijuana growing operation. The officers who executed the warrant for Kluss's residence found a hidden "sophisticated grow room" in the basement containing several high energy grow lights, numerous drying marijuana plants, processed marijuana, leaves and stalks, weighing scales and other drug-related items which were seized by the officers.

## II. Motion To Suppress

Kluss moved to suppress all of the evidence seized from his residence. The district court denied the motion. Kluss contends that for several reasons the ruling must be reversed on appeal. Kluss's arguments may be summarized as follows: (1) Officer Richard violated statutory and constitutional provisions in obtaining the records of a utility company showing the monthly power consumption at Kluss's residence and at his rural property; (2) Richard deliberately or recklessly misrepresented the substance of the utility records and other information he presented to the magistrate in obtaining the search warrant; (3) Richard omitted certain information which was material to the magistrate's determination of whether probable cause existed for a search warrant; (4) the information supplied by the anonymous informant was inherently unreliable; (5) the totality of admissible information given to the magistrate was not sufficient to provide probable cause for issuance of the search warrant. The facts relative to these issues and our discussion of them are as follows.

Sometime in April or early May, 1991, Officer Richard called the local office of the utility company (hereinafter WWP) which furnished power to the Kluss residence in an attempt to verify information given to him by the anonymous informant about Kluss using high energy grow lights in his basement grow room. He was told what Kluss's monthly power consumption figures had been. He also learned, in a similar manner, about the monthly power use of the person who had occupied the residence before it was purchased by Kluss. From a comparison of these figures Richard concluded that Kluss's consumption of power was high. He ob-

tained a subpoena prepared by the prosecuting attorney's office, had it issued by a clerk of the district court and served on WWP to obtain a written record of Kluss's consumption rates at his residence.

When Officer Richard applied for a search warrant, using this information, he informed the magistrate that Kluss's consumption of power was usually double or triple that of the previous occupant. Richard stated that from his own inquiries and observations he could not determine any apparent reason for the high consumption rate other than that given by the anonymous informant.

### a. Noncompliance with I.C.R. 17(b) and I.C. § 37–2741A

Kluss first contends that the state violated I.C.R. 17(b) and I.C. § 37–2741A in obtaining power records from WWP. The subpoena prepared by the prosecuting attorney's office so that Richard could obtain a written copy of Kluss's power usage record from WWP recited that it was being issued under I.C.R. 17(b). The Rule provides that a subpoena may be issued by the clerk to a "party" for use in obtaining documentary evidence. The state readily conceded in district court that the Rule did not authorize the issuance of the subpoena before a criminal action had been instituted.

■ The district court held that violation of the Rule did not, per se, require suppression of the information Richard had acquired from WWP. The district court ruled that prior to the issuance of the subpoena, Richard "had legally obtained all of the power usage record information on Kluss and the prior occupant. The subpoena was used merely to obtain the hard copy record of only Kluss's power usage." The "hard copy" really added nothing to the information Richard already had obtained.

However, Kluss also argues that Richard had not "legally obtained" the information because in doing so he also violated I.C.

§ 37–2741A. This statute provides, in part, that

> (a) Upon request of the attorney general or prosecuting attorney, a subpoena for the production of records of a financial institution or utility may be signed and issued by a district court judge if there is probable cause that a violation of the provisions of sections 37–2732, 37–2733, 37–2734 or 37–2734A, Idaho Code, has occurred or is occurring and that the records sought will materially aid in the investigation of such activity or appear reasonably calculated to lead to the discovery of information that will do so.

Kluss correctly notes that the subpoena was issued in this case without compliance with the statute because the state—acting through the prosecuting attorney—made no effort to meet the probable cause requirement nor was the subpoena issued by any district court judge. Kluss argues that the above language provides the exclusive way utility records may be obtained by a prosecuting attorney and that the statute creates a privacy interest in such records.

■ As to Kluss's first argument, the district court noted that it ignored subpart (e) of the statute:

> (e) The provisions of this section do not preclude the use of other legally authorized means of obtaining records, nor preclude the assertion of any legally recognized privileges or the right to seek a protective order where appropriate.

We uphold the district court's ruling that Richard used "other legally authorized means" to obtain orally the same information that he later obtained in written form from WWP with use of the subpoena. In the words of the district court, "the ICR 17(b) subpoena used was harmless in that it did not reveal any information which law enforcement had not already obtained orally. Absent statutory or constitutional protection of Kluss' power records, Richard did not initially obtain the power records by illegal means." We agree.[1]

---

1. Kluss argued to the district court that WWP violated its own policy in giving the monthly power usage information orally to Richard. The district court noted evidence that WWP's written policy allowed law enforcement personnel access

to such information at the time, and that, in any event, if there had been some unwritten change in policy, the fact that "WWP may have violated its own [unwritten] policy does not mandate the

### b. Statutory Right of Privacy

 Kluss next argues that I.C. § 37–2741A recognizes or creates a right to privacy in utility records, a right which he contends was violated when Richard obtained the power usage information from WWP without complying with the statute. The district court noted that the legislature could have spoken directly on the creation of a right to privacy if this had been the intent in I.C. § 37–2741A. Moreover, subsection (e) of the statute negates any implication that utility records can be obtained only by a showing of probable cause and a need for their production. The language of the statute as a whole hardly creates any objectively reasonable expectation of privacy in such records. As the district court noted, "[a] more reasonable construction would be that the statute provides a method of overcoming a privacy policy provided by the utility or by other law." This construction is supported by the legislative statement of purpose accompanying House Bill 218 in the 1989 Legislature:

> The purpose of this legislation [I.C. § 37–2741A] is to provide a procedure whereby a subpoena for bank records and records of utilities can be obtained easily to facilitate financial investigations of individuals who manufacture or distribute controlled substances.

We conclude that the statute creates no privacy interest in utility company records. We do not reach the question, therefore, whether a violation of a statutory right of privacy requires suppression of evidence, when the statute itself makes no mention of the sanction of suppression.[2]

### c. The Constitutional Right to Privacy

 Kluss next argues that he has a right to privacy in utility records pertaining to his consumption of power under Article 1, § 17 of the Idaho Constitution. In ruling on Kluss's motion to suppress, the district judge issued a comprehensive well-written memorandum opinion discussing the same issues we address here. Because we generally agree with the district judge's analysis of the constitutional issue, we adopt it here:

> In *U.S. v. Miller*, 425 U.S. 435, 96 S.Ct. 1619, 48 L.Ed.2d 71 (1976), the U.S. Supreme Court held that a person had no expectation of privacy in the business records of a third party and, therefore, no interest protected by the Fourth Amendment in such records. In particular, the Court stated:
>
> > This Court has held repeatedly that the Fourth Amendment does not prohibit the obtaining of information revealed to a third party and conveyed by him to government authorities, even if the information is revealed on the assumption that it will be used only for a limited purpose and the confidence placed in the third party will not be betrayed.
>
> In *Smith v. Maryland*, 442 U.S. 735, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979), the Court noted that it had consistently held that a person has no legitimate expectation of privacy in information he voluntarily turns over to third parties. Based upon the analysis in these cases, it is apparent that under the federal constitution the Fourth Amendment would not protect Kluss's power records. By the same reasoning, the State asserts an absence of protection under the state constitution.
>
> The focus then becomes whether the disclosure of Kluss's power usage record violated Kluss's right to privacy under Art. 1, § 17 of the Idaho Constitution. In *State v. Thompson*, 114 Idaho 746, 760 P.2d 1162 [1988], the Idaho Supreme Court held that in interpreting Art. 1, § 17 of the Idaho Constitution that the court was not bound by the United States Supreme Court's interpretations of the Fourth Amendment to the United States Constitution, and that the court was free to extend protection under the Idaho Constitution beyond those provided by United States Constitution.

---

suppression of the power records." Kluss has not pursued this line of argument in this appeal.

**2.** In I.C. § 18–6705, for example, the legislature explicitly prohibited the use of evidence directly or indirectly obtained through unauthorized interception of wire or oral communications in violation of Chapter 67 of Title 18, Idaho Code, entitled "Communications Security" (1980 Idaho Sess.Laws, ch. 326, p. 833).

The court held that there was a legitimate and reasonable expectation of privacy in the phone numbers that were dialed. The court reached this conclusion by adopting Justice Stewart's dissent in *Smith*, which analyzed the vital role that the public telephone had come to play in private communications. Stewart noted that basic nature of a telephone call required use of the telephone company property and dialing of a number which could be recorded by the telephone company for billing purposes. Stewart pointed out that the user of even a public telephone could assume that the words he uttered into the mouthpiece would not be broadcast to the world, and noted that a person making a call from his home was entitled to make a similar assumption about the numbers he dialed. Stewart argued that the numbers dialed from a private telephone were within constitutional protection because it was private information gained from surveillance, and the information emanated from private conduct within a person's home or office—locations that without question are entitled to Fourth and Fourteenth amendment protection. Stewart further argued that the dialing information was an integral part of the telephone communication that under [*Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) ] was entitled to constitutional protection. Stewart noted that the numbers dialed were not without content.

[In *State v. Thompson, supra,* three of the five justices] also adopted Justice Marshall's dissent in *Smith*, wherein Marshall maintained that in determining whether privacy expectations are legitimate within *Katz* depended not on the risks an individual could be presumed to accept when imparting information to third parties, but on the risks he should be forced to assume in a free and open society. Marshall noted that the court should not merely recite risks without examining the desirability of saddling them upon society. In making this assessment, courts must evaluate the "intrinsic character" of investigative practices with reference to the basic values underlying the Fourth Amendment. And for those "extensive intrusions that significantly jeopardize individuals' sense of security more than self-restraint by law enforcement officials is required." Justice Johnson concluded in *Thompson* that the above cited dissenting comments as stating the interpretation that should be given to Art. 1, § 17 of the Idaho Constitution **as it applies to the use of pen registers in Idaho.** Kluss now requests that this court hold that Art. 1, § 17 also extends such protection to power records in Idaho. [Emphasis in original.]

Kluss primarily relies on the Washington case of *In re Request of Rosier*, [105 Wash.2d 606,] 717 P.2d 1353 (1986) and the California case of *People v. Chapman*, [36 Cal.3d 98, 201 Cal.Rptr. 628,] 679 P.2d 62 (1984).

The *Rosier* court determined that an individual's power records held by a municipal corporation (Public Utility District No. 1 of Snohomish County) were protected from disclosure to law enforcement under Washington's public disclosure act unless the requesting police agency had an articulable suspicion of illegal conduct by that individual. The holding was specifically premised upon the provisions of Washington's public disclosure act. The court declined to address any claim of constitutional protection. If *Rosier* applied to the case at bar, the power records would not be suppressed, as the authorities had at least an articulable suspicion of illegal conduct by Kluss.

*Chapman* involved police acquisition from the telephone company, without a warrant or subpoena, of the name and address of the holder of an unlisted telephone number. The California court held that such information was protected by the California Constitution, Art. 1, § 18, the comparable provisions to Idaho Constitution Art. 1, § 17. The California court determined that the telephone subscriber "had a reasonable expectation of privacy in the unlisted information" and in fact had paid an extra fee to the telephone company for the unlisted number. Holding that the "disclosure of the subscriber's name and address may well add the missing link to

make up a 'virtual current biography' " the court suppressed the information.

In order to have electricity, Kluss was obliged to obtain the same from WWP. Kluss did nothing to create the records except consume power. The power records in the case at bar reveal only the amount of power usage. The power records were maintained by WWP in the ordinary course of business. They do not identify any activities of Kluss. On a comparative basis they may demonstrate that the power use at the Kluss home is greater or lesser than similar houses or at similar times or that the power use has increased or decreased at different times. The information does not provide any intimate details of Kluss's life, identify his friends or political and business associates, nor does it provide or complete a "virtual current biography." The power records unlike telephone or bank records, do not reveal discrete information about Kluss's activities. High power usage may be caused by any one of numerous factors: hot tubs, arc welders, poor insulation, ceramic or pottery kilns, or indoor gardening under artificial lights.

On the record of this matter, I am unable to find that Kluss had any subjective expectation of privacy in the WWP power records.[3] Even if I assume that Kluss had a subjective expectation of privacy in the power records, I cannot conclude that such expectation was objectively reasonable. The power records are not protected from disclosure by Idaho Constitution Art. 1, § 17. [Footnote added.]

We reach the same conclusion that the scope of protection afforded by Article 1, § 17 of the Idaho Constitution does not extend to the individual power consumption records maintained by a utility such as WWP. We do not view any such expectation of privacy in those records as being objectively reasonable. If, as a matter of policy, a utility chooses to voluntarily disclose such information to a law enforcement officer without a subpoena is-

sued under either I.C.R. 17(b) or I.C. § 37–2741A, that disclosure is lawful, and there is neither any statutory nor constitutional basis for suppression of the evidence so obtained. We now turn to the other arguments Kluss makes in urging that the search warrant for his residence was invalid.

### d(1). The *"Franks"* issue

Kluss contends that even if Officer Richard lawfully obtained his power usage record from WWP without violating his constitutional right of privacy, nevertheless, Richard deliberately or recklessly misrepresented the substance of the utility records and other information he presented to the magistrate in obtaining the search warrant. As a result, Kluss contends, the magistrate was misled into believing there was probable cause for the warrant when there was not.

In *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), the United States Supreme Court set forth the procedure under the Fourth Amendment for a defendant to challenge a warrant based on allegedly false information. The Idaho Supreme Court adopted the *Franks* approach for Art. 1, § 17 of the Idaho Constitution in *State v. Lindner*, 100 Idaho 37, 592 P.2d 852 (1979). "According to *Franks* and *Lindner*, a defendant must show by a preponderance of the evidence not only that an affiant made a false statement to obtain a warrant, but also that the affiant either provided the false statement to the magistrate knowingly and intentionally or with reckless disregard for the truth." *State v. Peightal*, 122 Idaho 5, 7, 830 P.2d 516, 518 (1992) (citations omitted). *See also State v. Jardine*, 118 Idaho 288, 796 P.2d 165 (Ct.App.1990).

Here, Kluss presented a *Franks* issue to the district court and after two hearings the court made written findings and conclusions, deciding that there was no *Franks* problem which would invalidate the search warrant.

---

3. We note that the unidentified person who called Officer Richard reported that Kluss was prepared to throw off questions about his high use of electricity by statements attributing the usage to operation of an arc welder, electric heat and a jacuzzi. Thus, some evidence exists in the record showing that Kluss did not have "any subjective expectation of privacy in the WWP power records."

In *Peightal,* our Supreme Court noted the standard of review to be applied in reviewing the trial court's decision denying a defendant's motion to suppress constitutionally challenged evidence. "[W]e will overturn the trial court's factual findings only if they are clearly erroneous . . . while we agree that we should freely review whether the trial court correctly applied the law to the facts, . . . findings of the trial court . . . should be overturned only if not supported by substantial evidence." 122 Idaho at 7, 830 P.2d at 518 (citations omitted).

### d(2). Omissions of Fact by the Warrant Applicant

■ Kluss contends that Officer Richard deliberately or recklessly withheld information from the magistrate about the nature of Kluss's power consumption which, if disclosed, could have altered the magistrate's finding of probable cause. At the suppression hearings Kluss introduced charts indicating that his power consumption prior to June 1991, was consistent with established guidelines for a "medium" to "large" sized residence using electric heat. Kluss also noted that under these guidelines the prior occupant's power use was below that of a single bedroom apartment using electric heat; however, Kluss never offered any proof that he or the previous occupant heated the house with electricity.

Officer Richard testified at the hearing that he was not familiar with the document Kluss was relying upon; that he had relied upon statements made by the WWP customer representative that Kluss's power usage seemed high, upon his own comparison of the previous occupant's power usage, and upon his police training and experience to conclude that the power consumption at the Kluss residence was high.

The district court carefully reviewed the record of the proceedings in the magistrate division. In its memorandum opinion, the district court discussed power comparison information which officer Richard had given to the magistrate. The court noted that Richard had disclosed to the magistrate that he did not know who the previous occupant was, or whether the residence had been occupied by a family. Richard disclosed exculpatory as well as inculpatory figures to the magistrate and told the magistrate of his attempts to observe whether there was any equipment at the residence which might account for Kluss's higher consumption of power. The district court was not persuaded by Kluss's argument that the situation was similar to *State v. Jardine, supra,* where the applicant for a search warrant misled the magistrate by not disclosing that a power consumption comparison included figures for a period when the residence was vacant before Jardine began his occupancy. Here, the district court concluded that officer Richard did not deliberately, or with reckless disregard for the truth, omit giving the magistrate exculpatory evidence about Kluss's power usage.

We have examined Kluss's other arguments attempting to show that Officer Richard intentionally omitted giving the magistrate other exculpatory information which Richard had learned from the caller. In this appeal we are shown no convincing reason for overturning the district court's factual findings or for disagreeing with the court's legal conclusions concerning the *Franks* and *Jardine* issues. Accordingly, we concur in the district court's analysis of these issues, as contained in the court's memorandum opinion and order, without further discussion here.

### e. The Reliability of the Informant and the Showing of Probable Cause

■ Kluss next contends that the information supplied by the anonymous caller was inherently unreliable and could not be considered in determining whether there was a showing of probable cause for the issuance of the search warrant for Kluss's residence. The non-incriminating information which the caller gave Richard about Kluss and his associates proved to be accurate. Officer Richard verified nearly all of that information before applying for the warrant. By his own investigation Richard was able to obtain some verification of the incriminating information, as well.

The caller gave Richard accurate information about the location of rural property owned by Kluss away from the city of Coeur d'Alene. The caller told Richard that Kluss

said he was constructing a storage building on this property over a basement room where Kluss planned to put a marijuana growing operation. Richard talked to the county building inspector who showed Richard the blueprint of the building. The building plan showed a storage area and "office" over a basement, which the inspector indicated was unusual. The inspector also told Richard about an unusual opening in the basement wall which had no apparent purpose. Based on his own experience and training, Richard concluded that the opening was likely intended for a venting system, a necessary feature of a closed marijuana-growing operation. All of this information was given to the magistrate when Richard applied for the search warrant. Richard also informed the magistrate that he had checked Kluss's application for power at this rural site. On the application Kluss had indicated he would be using power for an arc welder, electric heat and a sauna or jacuzzi, all high-energy appliances. According to the anonymous caller, Kluss said he would divert suspicion about high-energy use by indicating these other uses for the power. This unusual combination of factors tended to corroborate the incriminating information supplied by the caller.

Richard also told the magistrate about similar information the caller had given him about rural property belonging to one of Kluss's "associates." The caller related that Kluss and the associate had recently finished trenching between a house and a pole barn on the associate's property to bury and hide an electrical cable which would supply power to a similar underground "grow room." Richard informed the magistrate that he had flown over the property and was able to observe signs of recent trenching between the house and pole barn. Richard also told the magistrate that utility company records for this property showed that power consumption for April and May, 1991, was double that of previous months. This unusual combination of facts which Richard checked through his own investigation provided further corroboration of the incriminating information furnished by the anonymous caller.

Finally, shortly before applying for the search warrant for Kluss's residence, Richard personally picked up the garbage which had been set out in front of Kluss's residence for pickup on two separate days. On each occasion, a search of the garbage revealed minute amounts of both fresh and old plant material which, when tested, were found to be marijuana.

Kluss argues that the amounts of marijuana recovered from his garbage were too small to provide probable cause that an marijuana growing operation was being conducted in his residence. His argument ignores the reality that it is the "totality of the circumstances" which must be considered in determining whether probable cause exists for the issuance of a warrant. *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); *State v. Lang,* 105 Idaho 683, 672 P.2d 561 (1983). The finding of even minute amounts of marijuana in the household garbage provides some corroboration of the caller's statement that the illegal substance was present in the home. "In reviewing the findings of a magistrate, our function is limited to ensuring that the magistrate had a substantial basis for concluding that probable cause existed. Moreover, great deference is to be paid such determinations by reviewing courts." *State v. Lang,* 105 Idaho at 684, 672 P.2d at 562 (citations omitted).

In summary, we conclude that the evidence presented to the magistrate at the probable cause hearing is not affected by any *Franks* or *Jardine* problem. The basis of the informant's knowledge and the veracity of the informant were sufficiently established so that the magistrate could find that the information provided by the caller was reliable. There was a sufficient basis for concluding that probable cause existed. Accordingly, we uphold the district court's decision denying Kluss's motion to suppress.

### III. Is Possession of Marijuana With Intent to Deliver an Included Offense of Possession of Marijuana Without a Tax Stamp?

Kluss contends next that the crime of possession of marijuana with intent to deliver, I.C. § 37–2732(a)(1)(B), is an offense includ-

ed within the crime of possession of a controlled substance without a tax stamp, I.C. § 63–4207(2). He argues that the district court committed "fundamental error" by not instructing the jury on the relation between the two crimes. Kluss concedes that he did not raise this issue in the district court at any time, nor did he request any instruction from the court that the one offense was included in the other. Nevertheless, he contends that he is entitled to raise the issue for the first time here because the error was fundamental to a fair trial. On this issue we note what our Supreme Court said in *State v. Lavy*, 121 Idaho 842, 844, 828 P.2d 871, 873 (1992).

> It is well established that issues not raised in the trial court cannot later be raised on appeal, unless the alleged error would constitute "fundamental error." Fundamental error is error "which so profoundly distorts the trial that it produces manifest injustice and deprives the accused of his fundamental right to due process." *State v. Mauro*, 121 Idaho 178, 824 P.2d 109 [1991]; *State v. Morris*, 116 Idaho 834, 780 P.2d 156 (Ct.App.1989); *State v. Koch*, 115 Idaho 176, 765 P.2d 687 (Ct.App.1988). [Other citations omitted.]

■ Here, Kluss contends that the error committed is "of constitutional dimensions," and he focuses solely upon Article I, § 13 of the Idaho Constitution, providing that "No person shall be twice put in jeopardy for the same offense ..." However, as our Supreme Court has often held, even constitutional issues presented for the first time on appeal may not be considered unless fundamental error is shown or the case falls within some other exception to the rule. *See, e.g., State v. Fodge*, 121 Idaho 192, 824 P.2d 123 (1992) (constitutional challenge to the statute on included offenses, I.C. § 19–2132, first raised on appeal was held to be barred by

the rule), *citing Sanchez v. Arave*, 120 Idaho 321, 815 P.2d 1061 (1991). *See also State v. Kenner*, 121 Idaho 594, 597, 826 P.2d 1306, 1309 (1992) (the Court considered whether Kenner's privilege against self-incrimination had been violated because the allegation, had it been true, suggested fundamental error).

■ Here, the court gave complete and fair instructions explaining the elements of each crime which the state had the burden to prove. No error is asserted as to those instructions. It was Kluss's duty to request an instruction regarding included offenses. I.C. § 19–2132(b)(1); *State v. Eastman*, 122 Idaho 87, 90–91, 831 P.2d 555, 558–559 (1992) (discussing primarily subpart (a) of I.C. § 19–2132). We find *Eastman* to be apposite here. Looking narrowly at the question framed by Kluss, whether the district court erred by not giving an included offense instruction, we hold that where there was no request for such an instruction, and the court was given no reason to believe that such an instruction was desired by Kluss or appropriate under existing law, there was no error. *A fortiori*, there was no fundamental error. By this decision, we do not mean to suggest that we agree with Kluss's argument that the offense of possession of marijuana *with intent to deliver* is included within the crime of possession of marijuana without a tax stamp. We do not reach that question here.

## IV. Did Kluss receive double punishment for the same acts in violation of I.C. § 18–301?

■ Kluss next contends that for the single act of being found in possession of marijuana in his home on June 21, 1991, he was convicted and sentenced for two separate crimes defined in I.C. § 37–2732(a), namely, possession of marijuana with intent to deliver, and manufacturing marijuana.[4] Kluss ar-

---

4. Here, the jury was instructed that the term "'manufacture' means the planting, cultivation, growing, harvesting or preparation of marijuana." Instr. 17–A. We note that this definition is not as inclusive as the definition of "manufacture" in I.C. § 37–2701(r). The applicable parts of the statutory definition are:

"Manufacture" means the production, preparation, propagation, compounding, conversion or processing of a controlled substance,

... *and includes any packaging or repackaging of the substance* or labeling or relabeling of its container, except that this term does not include the preparation or compounding of a controlled substance by an individual for his own use.... [emphasis added].

However, no error has been assigned to the wording of instruction no. 17–A; accordingly, we will base our analysis of this issue not on the statutory definition of "manufacture" but on the

gues that his separate sentences for these two crimes, where they arise from a single act of growing marijuana, constitute double punishment in violation of I.C. § 18–301. This statute provides:

An act or omission which is made punishable in different ways by different provisions of this Code may be punished under either of such provisions, but in no case can it be punished under more than one; an acquittal or conviction and sentence under either one bars a prosecution for the same act or omission under any other.

Where the facts proven by the state showed only a single act or unseverable event, the statute has been invoked successfully to avoid punishment for more than one crime charged as a result of the same conduct. *See e.g., State v. Bingham,* 116 Idaho 415, 776 P.2d 424 (1989) (sentence for lewd conduct set aside where the evidence did not disclose the sequence of events and the same set of facts resulted in separate convictions for lewd conduct and rape); *State v. Smith,* 121 Idaho 20, 822 P.2d 539 (Ct.App.1991) (held: charges for inattentive driving and DUI were based upon one continuous and indivisible act of driving erratically, while under the influence of alcohol).[5]

Kluss made this same argument to the district court at a post-trial hearing, relying chiefly upon *State v. Randles,* 115 Idaho 611, 768 P.2d 1344 (Ct.App.1989), *on review, rev'd in part on other grounds,* 117 Idaho 344, 787 P.2d 1152 (1990). In *Randles* two defendants who occupied the same household were jointly tried and found guilty of manufacturing marijuana and possession of marijuana with intent to deliver. They appealed contending, among other things, that their punishment for both crimes violated I.C. § 18–301. The Court of Appeals upheld the jury verdicts. This Court discussed the "temporal test" adopted by our Supreme Court and the need to show separate acts supporting each crime. 115 Idaho at 614–16, 768 P.2d at

1347–49. On review, our Supreme Court did not reach the issue posed by I.C. § 18–301; rather, the Court held that the state's evidence tying each defendant individually to the crime of manufacturing marijuana was insufficient to prove either defendant guilty of the crime of manufacturing. As a result, only the Court of Appeals has addressed the issue of double punishment under I.C. § 18–301 as it relates to overlapping but separately charged crimes of manufacturing marijuana and possession of marijuana with intent to deliver. *State v. Randles, supra; State v. Ledbetter,* 118 Idaho 8, 794 P.2d 278 (Ct.App. 1990).

Predominantly, the state's evidence at trial went to prove the crime of manufacturing marijuana. That evidence, viewed most favorably toward the state, established that Kluss conducted a sophisticated marijuana-growing operation in a specially constructed room hidden in the basement of his home for a period of several months until June 21, 1991. During this time he grew a large number of marijuana plants to maturity, using specially controlled lighting and growing conditions. Some marijuana had been processed before the search was conducted, as the officers in executing a search warrant found separated leaves and stems of the plants in the basement of the home. Thirty-seven other plants, still in the drying process, were found hanging in the basement. About eight pounds of marijuana (whole plants, leaves and stalks) were seized during the search.

The state had a more difficult time in proving the crime of possession of marijuana "with intent to deliver." The state had no proof of any previous deliveries or sales or statements by Kluss to establish his intent to deliver marijuana. Of course, the anonymous caller who precipitated the investigation did not testify at trial. The officers who searched Kluss's residence found no marijuana packaged for sale, nor did they find any

---

definition given to the jury in this case. *See State v. Randles,* 115 Idaho 611, 616 n. 3, 768 P.2d 1344, 1349 n. 3 (Ct.App.1989) *rev'd in part,* 117 Idaho 344, 787 P.2d 1152 (1990).

**5.** However, it is clear that when two crimes arise from the same sequence of events, such is not

sufficient to invoke the protection of I.C. § 18–301. *State v. Chapman,* 112 Idaho 1011, 1013, 739 P.2d 310, 312 (1987); *State v. Lewis,* 123 Idaho 336, 848 P.2d 394 (1993); *State v. Spurr,* 114 Idaho 277, 755 P.2d 1315 (Ct.App.1988).

records or notes indicating that deliveries or sales had been made.

As mentioned, the officers did find marijuana hanging outside the grow room. In close proximity they found a set of scales, plastic bags and a device for heat-sealing plastic bags. One of the officers testified, based upon his years of experience in drug enforcement, that the scales were commonly used by drug dealers to weigh the drugs because all such transactions were on the basis of weight. The officer also gave his opinion that the quantity and value of marijuana found were more than the quantity and value of marijuana an individual would have for his own consumption. Additionally, the officer testified that the expensive growing operation was justified only by the expectation of marketing the product, as opposed to individual consumption by the grower. Thus, while we hold that there was substantial evidence upon which the jury could find that Kluss had an intent to deliver the marijuana, the evidence almost entirely overlaps the evidence relating to "manufacturing."

■■■ It is not enough to say that the two crimes have separate elements of proof and that the state proved that Kluss had the intent to deliver the marijuana as it was manufactured. In determining whether I.C. § 18–301 was violated, we focus on the "acts" of the defendant, not upon the elements of the crimes. *State v. Sterley*, 112 Idaho 1097, 739 P.2d 396 (1987); *State v. Ledbetter*, 118 Idaho 8, 13, 794 P.2d 278, 283 (Ct.App.1990).

In *State v. Randles, supra*, the officers found numerous packages of marijuana scattered around the defendants' residence. This was one of the factors used to prove the defendants' intent to deliver the marijuana which they had been charged with manufacturing. The packaging of the marijuana was also one of the "acts" of the defendants which we said were in addition to the "acts" necessary to prove the manufacturing charge. We were able to attribute the act of packaging to the crime of possession with intent to deliver, rather than to the crime of manufacturing, because in *Randles*, as in this case, the in-

struction defining "manufacturing" did not include the act of packaging, and there was evidence that such packages were associated with the sale of marijuana. In this case, however, no acts of packaging were shown. At most, a reasonable inference could be drawn that Kluss had the intent to package the marijuana for delivery.

In summary, while we are satisfied that the state proved an intent to deliver the marijuana as it was being produced by the manufacturing process, we find no evidence in the trial of an "act" by Kluss in committing the crime of possession with intent to deliver that was not also an "act" of manufacturing marijuana. We hold that to punish Kluss for both crimes violates I.C. § 18–301. Accordingly, we direct the district court to vacate the conviction and sentence for the crime of possession of marijuana with intent to deliver.

## V. The Sentencing Issues

■■■ Kluss has raised two other issues relating to alleged errors in sentencing. He contends that the district court erred by considering Kluss's failure to rebut evidence submitted by the state at sentencing which indicated that Kluss enjoyed a substantial, although unreported, income arguably derived from illicit drug transactions. We have examined the record pertaining to this issue. We hold that the district court did not err. The court was entitled to consider the evidence submitted by the state and the inferences which could be drawn reasonably from such unrebutted evidence. We are not persuaded that the judge gave more weight to this evidence because of Kluss's silence in the face of the evidence. We are satisfied by the district judge's explanation of his thought processes that no prejudice occurred.

On each of the three counts, Kluss was given a unified sentence of five years requiring incarceration for at least one and one-half years. The sentences were to be served consecutively, and Kluss was fined $2,000 on each count.[6] In addition to the double punishment argument we have already dis-

---

6. At the time these offenses were committed, the maximum penalty for manufacturing or delivering marijuana, or possession of marijuana with intent to deliver, was imprisonment for five years and a $15,000 fine. I.C. § 37–2732(a)(1)(B). Under I.C. § 63–4207(2) of the "Illegal Drug Tax

cussed, Kluss contends that the district court abused its discretion by imposing three consecutive, rather than concurrent, sentences requiring that he serve at least four and one-half years before becoming eligible for parole. He also argues that the sentence imposed for failure to affix a marijuana tax stamp is excessive.

We have directed that the sentence for possession of marijuana with intent to deliver must be vacated under I.C. § 18–301. We have reviewed the two remaining sentences, applying our well-known sentencing standards. We find no abuse of discretion in the length of the sentences or in the fact that they were ordered to be served consecutively. Accordingly, we uphold the sentences for manufacturing marijuana and for possession of marijuana without tax stamps. We remand the case for further proceedings consistent with this opinion.

WALTERS, C.J., and CAREY, J. Pro Tem, concur.

Act," a person found guilty of possession of a controlled substance "without affixing the appropriate stamps, labels, or other indicia . . . is punishable to the same extent as possession of the controlled substance is punishable as set out in [I.C. § 37–2732]." Possession of marijuana in an amount of more than three ounces was made punishable by imprisonment for not more than five years, or by a fine of not more than $10,000, or both. I.C. § 37–2732(e), as amended by 1989 Idaho Session Laws, Ch. 268, p. 654.