Michael J. SAMSON, Appellant,

v.

STATE of Alaska, Appellee.

No. A–5847.

Court of Appeals of Alaska.

June 14, 1996.

Dick L. Madson, Law Offices of Dick L. Madson, Fairbanks, for Appellant.

Eric A. Johnson, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before BRYNER, C.J., and COATS and MANNHEIMER, JJ.

COATS, Judge.

In December of 1992, a grand jury indicted Michael J. Samson on two counts of misconduct involving a controlled substance in the fourth degree. AS 11.71.040(a)(3)(A),(F). Samson filed a motion to suppress evidence which the police had obtained with two search warrants. The first warrant authorized the police to obtain the records of Golden Valley Electrical Association which showed the history of electrical power consumption at Samson's residence. The second warrant, which was based in part on the records of Samson's electrical power consumption obtained with the first warrant, authorized the police to search Samson's residence. During the search of Samson's residence the police seized two large marijuana plants and a small amount of psilocybin.

In his motion to suppress, Samson contended that the state had not presented sufficient probable cause to justify the magistrate's decision in issuing a warrant for the records of his electrical power consumption. After Superior Court Judge Ralph R. Beistline denied Samson's motion, Samson entered

a no contest plea, reserving his right to appeal the court's denial of his motion to suppress under *Cooksey v. State*, 524 P.2d 1251 (Alaska 1974).

On appeal, this court concluded that the state had not established probable cause to authorize the magistrate to issue a warrant for the records of Samson's power consumption. *Samson v. State*, Memorandum Opinion and Judgment No. 3007 (Alaska App., October 12, 1994). We determined, however, that this conclusion was not dispositive:

> However, we do not believe that this conclusion necessarily means that Judge Beistline erred in denying Samson's motion to suppress. It is possible that the state did not need a search warrant to obtain the power-usage information. In *State v. Chryst*, 793 P.2d 538 (Alaska App. 1990), we stated:

> > In determining whether [a person's] right to privacy was infringed we apply a two-part test: first, whether [the person] exhibited a subjective expectation of privacy; and second, whether society is pre-pared to recognize that expectation of privacy as reasonable.

*Id.* at 539–40 (citations omitted). We pointed out that:

> Different courts have arrived at different conclusions concerning what information is protected by a constitutional right of privacy. The federal position is set forth in *United States v. Miller*, 425 U.S. 435, 440–43, 96 S.Ct. 1619, 1622–24, 48 L.Ed.2d 71 (1976). In that case the United States Supreme Court held that a bank customer had no reasonable expectation of privacy that society was prepared to recognize in financial statements which he had voluntarily turned over to a bank[.]

*Id.* at 540. We pointed out that Professor LaFave had strongly criticized the *Miller* decision in his treatise. Wayne R. LaFave, *Search and Seizure*, § 2.7(c), at 511–17 (2d ed.1987). We also pointed out that "[t]he states of Washington and California have construed the provisions of their state constitutions which, like Alaska, have a specific provision guaranteeing a right to privacy, to protect some information which customers have given to the utility companies for the purpose of obtaining services." *Chryst*, 793 P.2d at 540. Under the particular facts of *Chryst*, we held that an individual did not have a reasonable expectation of privacy in his name and address when police had obtained that information from a public utility.

The issue of whether Samson had a reasonable expectation of privacy in his power-usage records is an issue that was not raised or considered in the trial court. In the absence of any factual context for determining whether Samson had a subjective expectation of privacy in his utility records or the reasonableness of that expectation, we have no basis for resolving this issue on appeal. We accordingly remand this case to the trial court for further proceedings consistent with this decision.

*Id.* at 6–7.

On remand, following an evidentiary hearing, Judge Beistline first concluded that Samson had not shown that he had a subjective expectation of privacy in the utility records. He found that Golden Valley Electrical Association had a written policy "that all information obtained by employees in the course of employment, including records of usage, will not be supplied to a third party without either the owner's permission or a court order." However, he found that "no evidence was presented at the hearing that Samson was aware of this policy or that he otherwise harbored a subjective expectation of privacy."[1]

Judge Beistline also concluded that, even if he were to assume that Samson had a subjective expectation of privacy, society was not prepared to recognize that expectation of privacy as reasonable. Judge Beistline re-

---

1. After the evidentiary hearing, Samson filed an affidavit which stated he was aware of the policy. Judge Beistline rejected the affidavit as "unpersuasive."

lied on *People v. Dunkin,* 888 P.2d 305 (Colo. App.1994), *cert. denied, Smith v. Colorado,* —— U.S. ——, 115 S.Ct. 2251, 132 L.Ed.2d 259 (1995), and *State v. Kluss,* 125 Idaho 14, 867 P.2d 247 (App.1993), in reaching his decision. Although both of these courts concluded that their state constitutions provided for greater privacy protection than federal law, both courts held that society was not prepared to recognize a reasonable expectation of privacy in utility records. *People v. Dunkin,* 888 P.2d at 307–08; *State v. Kluss,* 867 P.2d at 252–54. Judge Beistline specifically relied on the following language from *State v. Kluss:*

> In order to have electricity, Kluss was obliged to obtain the same from [his utility company.] Kluss did nothing to create the records except consume power. The power records in the case at bar reveal only the amount of power usage. The power records were maintained by [the utility company] in the ordinary course of business. They do not identify any activities of Kluss. On a comparative basis they may demonstrate that the power use at the Kluss home is greater or lesser than similar houses or at similar times or that the power use has increased or decreased at different times. The information does not provide any intimate details of Kluss's life, identify his friends or political and business associates, nor does it provide or complete a "virtual current biography." The power records, unlike telephone or bank records, do not reveal discrete information about Kluss's activities. High power usage may be caused by any one of numerous factors: hot tubs, arc welders, poor insulation, ceramic or potter kilns, or indoor gardening under artificial lights.

*Id.* at 254.

■ We also find the reasoning of *Kluss* and *Dunkin* persuasive. Although we recognize that neither Colorado nor Idaho have a

privacy amendment to their constitution similar to Alaska's,[2] both states have interpreted their constitutions to provide more protection to the right to privacy than is provided under the federal constitution. *State v. Kluss,* 867 P.2d at 252–53; *People v. Dunkin,* 888 P.2d at 307. We are persuaded by the reasoning of *Kluss* that utility records are maintained by the utility and do not constitute information in which society is prepared to recognize a reasonable expectation of privacy. We accordingly affirm Judge Beistline's order denying Samson's motion to suppress.

AFFIRMED.

MANNHEIMER, Judge, with whom BRYNER, Chief Judge, joins, concurring.

This case raises the question of whether the customers of an electric utility are protected by the warrant clauses of the Fourth Amendment to the United States Constitution and Article I, Section 14 of the Alaska Constitution when the government seeks information from the utility's records regarding a customer's amount of electricity usage. Like my colleagues, I conclude that such records do not command the same privacy protection as bank records. Bank records list the details of a customer's financial dealings—names of debtors, creditors, and most others with whom the customer does business. On the other hand, electric utility records of a customer's gross electricity usage reveal no details of the activities that consumed the electricity. I therefore agree that, at least for search and seizure purposes, Samson had no protected privacy interest in the utility's records of his electricity usage.

I am writing a separate concurrence because the facts of Samson's case raise another legal issue—the requirement of standing to contest an illegal search or seizure. As I said in the preceding paragraph, I agree that the police need not obtain a warrant to inspect or copy utility records if the utility voluntarily opens its records to the police. In Samson's case, however, the electric company did not voluntarily open its records to

---

2. Article 1, section 22, of the Alaska Constitution provides: "The right of the people to privacy is recognized and shall not be infringed. The legislature shall implement this section."

the police. Instead, the police obtained a warrant for Samson's records and served this warrant on the company. In our first opinion in this case, we ruled that this warrant was not supported by adequate probable cause; thus, Samson's electricity records were seized illegally. *Samson v. State,* Memorandum Opinion No. 3007 (Alaska App., October 12, 1994).

■ Because these records were compiled and kept by Golden Valley Electric, and because the records were seized from the electric company's premises, Golden Valley clearly would be entitled to seek suppression of this evidence if the government ever attempted to use these records in a criminal prosecution of the electric company. But Samson is in a different legal position because, normally, a person has no standing to seek suppression of evidence belonging to and illegally seized from someone else. *Brown v. United States,* 411 U.S. 223, 230, 93 S.Ct. 1565, 1570, 36 L.Ed.2d 208 (1973) ("Fourth Amendment rights are personal rights which ... may not be vicariously asserted.") (quoting *Alderman v. United States,* 394 U.S. 165, 174, 89 S.Ct. 961, 966, 22 L.Ed.2d 176 (1969)). The records in this case did not belong to Samson, and they were not seized from his possession; moreover, as we now hold, Samson had no protected expectation of privacy in the contents of those records. Thus, under traditional rules of standing, Samson could not complain that the police relied on an invalid warrant to obtain the records.

In *Waring v. State,* 670 P.2d 357 (Alaska 1983), the Alaska Supreme Court augmented the scope of the traditional standing rule: under Alaska law, a defendant has standing to seek suppression of illegally seized property belonging to someone else if the defendant shows that he or she was the target of the search and seizure violation. However, to obtain this vicarious standing, the defendant must show that the police purposely violated another person's rights in order to obtain evidence which they intended to use, not

against this third person, but against the defendant. *Waring,* 670 P.2d at 362–63.

The *Waring* rule does not apply to Samson's case because the police did not purposely violate Golden Valley Electric's rights. The police believed that they had a valid warrant for the records. Thus, under either the traditional standing rule or even the modified standing rule announced in *Waring,* Samson and other customers like him do not have standing to contest the seizure of the utility's records.

Moreover, in a criminal prosecution brought against one or more of the utility's customers, the utility company would have no standing to assert the violation of its own Fourth Amendment rights (because the utility company would not be a party). *See Rakas v. Illinois,* 439 U.S. 128, 132 n. 2, 99 S.Ct. 421, 425 n. 2, 58 L.Ed.2d 387 (1978) ("[A] person whose Fourth Amendment rights were violated by a search or seizure, but who is not a defendant in a criminal action in which the illegally seized evidence is sought to be introduced, [has no] standing to invoke the exclusionary rule to prevent use of that evidence in that action."); Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* (3rd ed.1996), § 11.3, Vol. 5, p. 117.

■ Thus, under traditional standing rules, neither the utility nor its customers have standing to protest the use of illegally seized records that the government uses as evidence in a criminal prosecution brought against a customer. This result could conceivably lead to abuses: knowledge that no one will have standing to oppose the fruits of illegal searches and seizures of a utility's records may encourage the police to recklessly disregard Fourth Amendment protections when dealing with utilities and similar record-keeping businesses.

*Waring* provides some protection against such abuses: under *Waring,* vicarious standing could be granted to a utility customer in cases where the police had engaged in "gross or shocking misconduct". 670 P.2d at 363.

But in addition, if this court were presented with evidence of repeated or flagrant Fourth Amendment violations by the police when they searched utilities or other businesses that compile similar records, then this court would be obliged to re-examine the current limits of the standing rule. With this caveat, I join in the court's decision.[1]

---

1. In this regard, I note that this court has recently reviewed two cases in which warrants were issued to search people's homes, based in part on previously obtained electricity consumption records. In each case, we found that the search warrant for the defendant's home was issued without probable cause. See *Lloyd v. State*, 914 P.2d 1282 (Alaska App.1996), and *Carter v. State*, 910 P.2d 619 (Alaska App.1996).

In both *Lloyd* and *Carter*, the electricity records that supported the search warrant applications were themselves seized under prior warrants. We were not asked to rule on the validity of those prior warrants. But if the warrants for Lloyd's and Carter's homes were issued without probable cause, it would seem likely that the previously obtained electricity records were also seized without probable cause.