The PEOPLE of the State of Colorado, Plaintiff–Appellant,

v.

Deloy Emilio ABEYTA, Defendant–Appellee.

No. 90SA32.

Supreme Court of Colorado, En Banc.

Sept. 10, 1990.

G.F. Sandstrom, Dist. Atty., Richard W. Dickerson, Deputy Dist. Atty., Pueblo, for plaintiff-appellant.

David F. Vela, State Public Defender, Victor I. Reyes, Deputy State Public Defender, Pueblo, for defendant-appellee.

Justice MULLARKEY delivered the Opinion of the Court.

In this interlocutory appeal pursuant to C.A.R. 4.1, the People challenge the district court's suppression order of evidence seized following the issuance of a search warrant. The district court ruled that the affidavit supporting the search warrant failed to establish probable cause. We reverse the suppression ruling.

I.

On May 24, 1989, Deloy Emilio Abeyta was arrested and subsequently charged with possession of more than eight ounces of marijuana and possession of marijuana with intent to distribute in violation of 18 C.R.S. 18–18–106(4)(b)(I) and (8)(b)(I) (1986 & 1989 Supp.). Abeyta moved to suppress evidence which was obtained pursuant to a search warrant for his residence located at 1225 Egan Avenue. After a hearing, the district court granted the motion on the grounds that the affidavit failed to establish probable cause for the issuance of the warrant to search 1225 Egan Avenue.

The application and affidavit for a search warrant, signed by Pueblo police detective Lewis Andrew and dated May 24, 1989, requested a warrant to immediately search 1225 Egan Avenue for evidence of criminal activity. The following information was contained in the affidavit.

The affidavit stated that within two weeks prior to the application for the search warrant, Detective Andrew received several phone calls concerning alleged marijuana sales occurring in the 1200 block of Egan Avenue. Detective Andrew talked to the three anonymous informants who said that they lived in the 1200 block of Egan Avenue and were concerned about the sale of marijuana from the residences located at 1220, 1222 and 1225 Egan Avenue. The callers refused to identify themselves, claiming they feared being harmed by the alleged marijuana dealers.

Caller #1 was an adult male who told Detective Andrew that the people living at 1225 Egan Avenue were selling marijuana. He stated that he had observed numerous cars parked in the 1200 block of Egan Avenue, and that occupants of these cars would get out of their vehicles and enter 1225 Egan Avenue. After a short time, these persons would return to their cars and leave the area. The caller further stated that, even when there was more than one person in the car, usually only one person left the car in order to enter 1225 Egan Avenue. Caller #1 also informed Detective Andrew that on several occasions the individuals who went into 1225 Egan Avenue would come out carrying what Caller #1 believed to be a plastic bag of marijuana. Caller #1 admitted that he knew what marijuana looked like and that it was usually packaged in plastic bags.

Caller #2 was an adult female who also lived in the 1200 block of Egan Avenue. She told Detective Andrew that the man living at 1222 Egan Avenue, Wilfred Marrujo, was selling marijuana out of his house. Caller #2 stated that she had seen numerous vehicles parked in the 1200 block of Egan Avenue and that people would leave their vehicles and enter the residence at 1222 Egan Avenue and purchase marijuana from Marrujo. Caller #2 informed Detective Andrew that she had been told by Marrujo's children who lived at 1222 Egan Avenue that their father was selling marijuana from their residence. She also told Detective Andrew that she had seen Marrujo selling plastic bags of marijuana

and she had watched him smoke marijuana. She further admitted that she knew what marijuana looked like and knew when someone was smoking marijuana based on how they smoked it and the accompanying smell.

The third caller was an adult male who informed Detective Andrew that the man living at 1222 Egan Avenue, Marrujo, and the man living at 1225 Egan Avenue, Abeyta, were selling marijuana from their residences. Caller # 3 said that Marrujo and Abeyta were partners in selling marijuana and exchanged marijuana with each other for sale to others. Caller # 3 told Detective Andrew that he had been on the premises of 1222 and 1225 Egan Avenue and had seen Abeyta and Marrujo use and sell marijuana to other people. Caller # 3 said that the marijuana was sold either in cigarette form or in plastic bags. Furthermore, Caller # 3 disclosed that he had used and bought marijuana from both Abeyta and Marrujo but that, now, he was upset with them because they were selling marijuana to young children in the 1200 block of Egan Avenue.

On May 24, 1989 at approximately 5:30 p.m. Detective Andrew went to the 1200 block of Egan Avenue and established a surveillance of 1222 and 1225 Egan Avenue. Detective Andrew stated that for thirty minutes he watched these two addresses and saw numerous people using 1225 Egan Avenue, one of them being Abeyta. According to Detective Andrew, the people went back and forth between 1225 Egan Avenue and 1222 Egan Avenue and it appeared that the occupants of both of these residences knew and were familiar with each other.

Detective Andrew also observed vehicular traffic to the two houses. Several cars parked in the 1200 block of Egan Avenue and, in each instance, only one of the occupants would leave the vehicle in order to enter either 1222 Egan Avenue or 1225 Egan Avenue. After a few minutes, the individual returned to the vehicle and the car left the area.

The affidavit contained detailed information regarding six men, all identified by name, who visited the 1200 block of Egan Avenue in a time period lasting approximately one hour. At various times, four of these men entered 1222 Egan Avenue and two of the men entered 1225 Egan Avenue for a short period of time and then left the neighborhood. These men were later stopped by Officer Ruggieri, and following a voluntary search, four of the men were found to possess either plastic bags of marijuana or marijuana cigarettes.

During the surveillance, Detective Andrew also saw the resident of 1220 Egan Avenue give Marrujo a brown leather case, which Detective Andrew recognized as a case specifically manufactured to carry Ohaus gram scales. Detective Andrew stated that he knew these scales to be commonly used to weigh controlled substances including marijuana. Marrujo took the brown leather case into his house and after a short time, he returned carrying what appeared to be a plastic bag containing a green plant-like substance which he handed to the resident of 1220 Egan Avenue.

Based on his observations while surveying the 1200 block of Egan Avenue, Detective Andrew stated in the affidavit:

> [a]ffiant knows that marijuana is commonly packaged in plastic bags and is commonly sold in this form and in the form of marijuana cigarettes. Based on the fact that people coming to 1222 and 1225 Egan Avenue stayed only a short time, sometimes leaving other occupants in the vehicle, and the fact that there was a steady flow of people to both residences, affiant feels, based on his experience as a Narcotic detective, that this type of activity is common for people who are street sellers of drugs, including marijuana.

Furthermore, in the affidavit Detective Andrew also stated that he personally knew Abeyta had been involved in the use and sale of marijuana for at least ten years and that during those ten years the Pueblo Police Department had received several "crime stoppers" calls concerning Abeyta and his selling of marijuana. Detective Andrew also stated that in checking police

records he discovered that on April 20, 1984 a search warrant for marijuana was executed at 1222 Egan Avenue where approximately nine ounces of marijuana were seized. Finally, Andrew stated that he had been a Pueblo police officer for seventeen years and had been assigned to the narcotics and intelligence unit of the police department for the last sixteen years. He said that he had had numerous occasions to observe drug traffickers and observe the packaging and selling of marijuana.

The trial court held that the affidavit did not allege sufficient facts for a person of reasonable caution to believe that contraband and material evidence of criminal activity would be found on the evening of May 24, 1989 at 1225 Egan Avenue. However, the trial court did state that the facts indicated that there would have been sufficient probable cause to justify a warrant for the residences at 1220 and 1222 Egan Avenue.

We disagree that the affidavit failed to establish probable cause and reverse the trial court's suppression order.

## II.

The Fourth Amendment to the United States Constitution and Article II, section 7 of the Colorado Constitution prohibit the issuance of a search warrant except upon probable cause supported by oath or affirmation particularly describing the place to be searched or objects to be seized. Probable cause exists when an affidavit for a search warrant alleges sufficient facts to warrant a person of reasonable caution to believe that contraband or evidence of criminal activity is located at the place to be searched. *People v. Quintana*, 785 P.2d 934, 936 (Colo.1990); *People v. Hearty*, 644 P.2d 302, 309–10 (Colo.1982). Therefore, the "issuing magistrate is simply to make a practical, common sense decision whether, given all of the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is fair probability that contraband of a crime will be found in a

particular place." *Quintana*, 785 P.2d at 937 (quoting *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 2331–32, 76 L.Ed.2d 527 (1983)). The duty of a reviewing court is to ensure that the magistrate had a substantial basis for concluding that probable cause existed. *Gates*, 462 U.S. at 238, 103 S.Ct. at 2332; *People v. Arellano*, 791 P.2d 1135, 1138 (Colo.1990).

Whether facts in an affidavit provided by a confidential informant establish probable cause for a search warrant depends not on a rigid set of legal rules but on a "practical, nontechnical 'totality of the circumstances' approach that considers an informant's veracity, reliability, and basis of knowledge." *People v. Varrieur*, 771 P.2d 895, 897 (Colo.1989). Under the *Gates* totality-of-the-circumstances test, an informant's account of criminal activities need not establish the informant's basis of knowledge, so long as the informant's statement is sufficiently detailed to allow a judge to reasonably conclude that the informant had access to reliable information about the illegal activities reported to the police. *See Gates*, 462 U.S. at 245, 103 S.Ct. at 2335; *Quintana*, 785 P.2d at 938; 1 W. LaFave, *Search and Seizure*, § 3.3(e) at 674 (1987). Moreover, even if an affidavit does not establish the informant's basis of knowledge for the reported criminal activity or the veracity of the reported information, police corroboration of the information that obviously relates to and describes criminal activities may properly be considered in a probable cause determination. *Quintana*, 785 P.2d at 938; *Arellano*, 791 P.2d at 1138. Furthermore, *Gates* credits the proposition that, because an informant is shown to be right about some things, he is probably right about other facts that he has alleged, including the claim that the object of the tip is engaged in criminal activity. *Alabama v. White*, —— U.S. ——, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990); *Gates*, 462 U.S. at 244, 103 S.Ct. at 2335.

Finally, we have held that doubts must be resolved in favor of magistrates' determinations of probable cause in order to avoid giving police an incentive to resort to warrantless searches in the hope of relying

on consent or some other exception to the warrant requirement that might develop at the time of search. *Varrieur,* 771 P.2d at 897; *see also Gates,* 462 U.S. at 236, 103 S.Ct. at 2331.

### III.

We now turn to the facts of this case to determine whether, by applying the totality-of-the-circumstances test, the affidavit established probable cause to issue a search warrant for Abeyta's residence at 1225 Egan Avenue. In urging us to affirm the trial court's suppression order, Abeyta argues that the affidavit was lacking on three grounds: 1) it did not establish any time frame for the observations of the informants, 2) the seizure of marijuana cigarettes from two people leaving 1225 did not amount to probable cause or enhance the informants' credibility and reliability, and 3) there was not probable cause sufficient to justify the search of 1225 Egan Avenue. We address these arguments in turn.

First, Abeyta argues that the information provided by the informants is stale. The trial court in its written order noted that the affidavit did not set forth any specific dates and times when the three anonymous callers had made their observations. Nor did the affidavit set forth the date and time when Caller # 3 had been inside 1225 Egan Avenue and observed Abeyta and Marrujo use and sell marijuana to other people. The affidavit also did not set forth the date and time when Caller # 3 had been inside 1225 Egan Avenue and purchased marijuana from Abeyta.

In *People v. Ball,* 639 P.2d 1078 (Colo. 1982), this court held that:

> while an affidavit must contain a sufficient statement of the time of the events relied upon to establish probable cause, it is not necessary that the timing of these events be delineated with exactitude or that the events themselves occur immediately prior to the issuance of the warrant. The test is whether the timing of the events is sufficiently set forth to justify a reasonable belief that seizable objects are present on the premises to be searched.

639 P.2d at 1082 (citations omitted). *See also People v. Grady,* 755 P.2d 1211, 1217 (Colo.1988) (although statement that informant had observed the defendant selling marijuana was not related to any time sequence in the affidavit, the nature of the drug-related activities indicated that the defendant was involved in a continuing course of events).

▪ The lack of specific times and dates within the affidavit is not fatal to the probable cause determination in this case. Detective Andrew spoke with the three callers within a two week period prior to the application for the warrant. It is a fair inference from the callers' statements that they were referring to contemporary incidents that were ongoing rather than incidents that occurred several weeks or months before they made their calls to Detective Andrew. Furthermore, Detective Andrew's surveillance corroborated much of the informants' information. Detective Andrew saw numerous cars stop within the 1200 block of Egan Avenue. He noticed only one occupant of any particular car enter either 1225 or 1222 Egan Avenue and return after a short time. He also observed Marrujo handling marijuana. Two individuals who left Abeyta's residence were found to possess marijuana and another two individuals who left Marrujo's residence also were found to possess marijuana. These facts justify the conclusion that the allegations made by the anonymous callers were not stale but were based on their observations of continuing criminal activities.

▪ Abeyta next argues that the seizure of marijuana cigarettes from two people leaving 1225 Egan Avenue did not amount to probable cause that there would be evidence of criminal activity found at 1225 Egan Avenue. The trial court emphasized that Detective Ruggieri made no attempt to find out where two of the men, John Vigil and Gerald Herrera, had obtained the marijuana cigarettes found on their persons immediately after leaving 1225 Egan Avenue.

We do not find the failure to obtain this information to be detrimental to the probable cause determination. At different times Vigil and Herrera both parked their cars in the 1200 block, entered 1225 Egan Avenue for a brief period of time, and then left the area. Upon being stopped by Officer Ruggieri, they both consented to a search which resulted in the discovery of marijuana cigarettes. Although there is no conclusive proof that the cigarettes were purchased at 1225 East Egan, Vigil's and Herrera's behavior was consistent with the conduct described by the informants. The informants had stated that Abeyta and Marrujo sold marijuana either in cigarette form or in plastic bags. Furthermore, both Vigil and Herrera made brief stops as described by the informants. Although the fact, by itself, that two individuals had marijuana on their persons after leaving 1225 Egan Avenue, may not amount to probable cause, when considered in the totality-of-the-circumstances, this fact does give credibility to the statements of the informants and increases the likelihood that evidence of criminal activity would be found at the residence of 1225 Egan Avenue.

■ Finally, we reject Abeyta's contention that the affidavit failed to establish probable cause. The three callers corroborated each other's statements to the extent that drug trafficking was occurring within the 1200 block of Egan Avenue and specifically within the residences of 1220, 1222, and 1225 Egan Avenue. Two of the informants specifically said that the occupants of the vehicles would leave their vehicles for a short period of time, enter a residence, then return to their car and leave the area. All three informants mentioned that the marijuana was being sold either in cigarette form or packaged in plastic bags; Caller #3 said that both Marrujo and Abeyta were partners in selling marijuana and exchanged marijuana with each other for sale to others. Callers #2 and #3 further stated that they had personally observed Marrujo and Abeyta use and sell marijuana to other people, and Caller #3 disclosed that he himself had bought marijuana from both Abeyta and Marrujo.

The informants each described their basis of knowledge and although their information was not so detailed as to ensure reliability, corroboration by Detective Andrew and Detective Ruggieri was sufficient to establish the truthfulness of the informants' statements. During Detective Andrew's surveillance, he witnessed people entering and leaving the three residences and noted that the occupants of the residences knew each other and freely went into and out of each other's houses. Detective Andrew observed numerous vehicles which made brief stops in the 1200 block to enter one of the suspected residences; the occupants of the vehicles would return shortly thereafter and leave the area. Detective Andrew related that this type of behavior is typical of drug dealing. Detective Andrew also saw Marrujo leave 1222 Egan Avenue carrying a plastic bag of what appeared to be marijuana. Detective Andrew further viewed what appeared to be scales used for weighing controlled substances which were taken out of 1220 Egan Avenue and brought into the residence of 1222 Egan Avenue.

■ Detective Andrew witnessed criminal activity occurring at both 1220 and 1222 Egan Avenue which corroborated information given by the callers. It is therefore likely that because the informants were found to be reliable as to two of the residences, their information pertaining to 1225 Egan Avenue also would be reliable. *See Alabama v. White*, —— U.S. at ——, 110 S.Ct. at 2417 (not unreasonable to conclude that the independent corroboration by the police of significant aspects of the informer's predictions imparted some degree of reliability to other allegations made by the caller); *Gates*, 462 U.S. at 244, 103 S.Ct. at 2335 (because an informant is shown to be right about some things, he is probably right about other facts that he has alleged including the claim that the object of the tip is engaged in criminal activity).

Therefore, under the totality of the circumstances we conclude that there was a fair probability that seizable objects would be found at 1225 Egan Avenue. Accord-

ingly, we reverse the order of the trial court. The case is remanded for further proceedings consistent with this opinion.

ERICKSON, J., does not participate.