The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Lawrence Douglas DUNKIN,
Defendant–Appellant.

The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Francis Joseph SMITH, Defendant–
Appellant.

Nos. 93CA0325, 93CA0326.

Colorado Court of Appeals,
Div. V.

May 5, 1994.

Rehearing Denied July 7, 1994.

Certiorari Denied Jan. 30, 1995.

Gale A. Norton, Atty. Gen., Stephen K. ErkenBrack, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Brian R. Whitney, Paul Koehler, Asst. Attys. Gen., Denver, for plaintiff-appellee.

Law Office of Stanley H. Marks & Richard A. Hostetler, Richard A. Hostetler, Denver, for defendants-appellants.

Opinion by Judge RULAND.

In this consolidated case, defendants, Laurence Douglas Dunkin and Francis Joseph Smith, each appeal a judgment of conviction for cultivation of marihuana. We affirm.

Based on evidence provided in a sworn affidavit, a warrant was issued to search a residence owned by Smith and occupied by Dunkin. Pursuant to the search warrant, various incriminating items were found including sophisticated lighting, irrigating, and drying equipment used for growing marihuana, 334 marihuana plants, and written manuals relative to growing marihuana plants which had Smith's fingerprints on them.

Following the search, defendants were arrested and charged with cultivation of marihuana and other offenses. Smith later moved to suppress the evidence obtained in the search. Dunkin joined the motion. After hearing testimony and legal argument, the trial court denied the motion.

Defendants subsequently entered into an agreement with the prosecution which provided that all charges except cultivation of marihuana would be dismissed, that this charge would be tried to the court, and that if convicted, defendants would be sentenced to probation. After approving the parties' agreement, the trial court found defendants guilty and sentenced them in compliance with the agreement.

On appeal, defendants challenge the denial of their motion to suppress the evidence seized from the residence on various grounds.

## I.

■ The investigating officer who prepared the affidavit in support of the warrant relied in significant part upon the unusual amount of electricity used in the residence as reflected by a record of the monthly billings. This information was furnished by the rural electric association. Defendants first contend that because they had a reasonable expectation of privacy in these utility records, the investigating officer's conduct in obtaining the information constituted a search in violation of the Fourth and Fourteenth Amendments as well as Colo. Const. art. II, §§ 7 and 25. We are not persuaded.

■ In determining whether there was an unconstitutional "search" here, we must first consider whether defendants had a legitimate expectation of privacy in Smith's utility records. *People v. Hillman*, 834 P.2d 1271 (Colo.1992). The legitimacy of that expectation of privacy depends, in turn, on whether defendants exhibited a subjective expectation of privacy in the records and whether that subjective expectation is one society recognizes as reasonable. *Hoffman v. People*, 780 P.2d 471 (Colo.1989). The societal analysis, however, is based upon objective factors and requires an examination of the facts and circumstances in each case. *People v. Wieser*, 796 P.2d 982 (Colo.1990).

We conclude that the acquisition of Smith's utility records did not constitute a search under either constitution.

## A.

■ Under the federal constitution, the Supreme Court has determined that the Fourth Amendment does not prohibit investigating officers from securing information revealed to a third-party without a warrant even if the information is revealed in confidence and on the assumption that it will be used only for limited purposes. *See United States v. Payner*, 447 U.S. 727, 100 S.Ct. 2439, 65 L.Ed.2d 468 (1980); *Smith v. Maryland*, 442 U.S. 735, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979). We are persuaded that this analysis extends to records maintained by a utility company regarding use of electricity in a particular structure. *United States v. Porco*, 842 F.Supp. 1393 (D.Wyo.1994). Hence, we conclude that no violation of the federal constitution occurred when the investigating officer obtained the utility records for the structure. *See People v. Beckstrom*, 843 P.2d 34 (Colo.App.1992).

## B.

In construing the Colorado constitution, our supreme court has in some cases imposed more stringent constraints on police conduct than those imposed by the United States Supreme Court in construing the federal constitution. Relying upon *People v. Sporleder*, 666 P.2d 135 (Colo.1983) and *Charnes v. DiGiacomo*, 200 Colo. 94, 612 P.2d 1117 (1980), defendants therefore contend that the Colorado constitution prohibits the search at issue.

Specifically, defendants maintain that use of electricity in a residence is indispensable and that, therefore, records of that usage may not be properly characterized as "voluntarily" disclosed by the occupants to the utility. As a result, defendants argue, their expectation that the utility will not disclose this information to investigating officers without a warrant is a reasonable one which society also accepts as reasonable. We disagree.

In *Charnes v. DiGiacomo, supra,* our supreme court held that a bank depositor has a reasonable expectation of privacy in the bank records of his financial transactions and that these records are therefore protected from disclosure by this state's constitutional provisions relating to searches and seizures. There, the court's rationale was that because bank accounts are necessary to modern commercial life and because customers do not intend to disclose the substance of these financial transactions, the inadvertent disclosure of such information is incidental to the customer's major purpose of facilitating fund transfers and is, therefore, not a true disclosure to a third party that would vitiate the customer's right to privacy.

Subsequently, in *People v. Sporleder, supra,* our supreme court applied a similar rationale in concluding that pen register records of telephone calls dialed are also protected from disclosure under this state's con-

stitution. There, the court noted that knowledge of telephone numbers dialed by an individual, as well as the date and time of each call, often yields inferential knowledge of the content of the conversations themselves. In addition, the *Sporleder* court reasoned that because telephone companies have not been insensitive to the confidentiality of this information, the defendant's expectation of privacy was a reasonable one.

Because of the nature of electrical use in a residence, however, we do not view either *Charnes* or *Sporleder* as dispositive of the issue here.

Research reveals that Idaho is the only other state to have addressed the specific issue before us in the context of that state's constitution. In *State v. Kluss,* 867 P.2d 247, 254 (Idaho Ct.App.1993), the court of appeals concluded that "the scope of protection afforded by Article 1, § 17 of the Idaho Constitution does not extend to the individual power consumption records maintained by a utility" company because the defendant's expectation of privacy in such records was objectively unreasonable. The court reasoned that:

> In order to have electricity, Kluss was obliged to obtain the same from [the utility provider]. Kluss did nothing to create the records except consume power. The power records in the case at bar reveal only the amount of power usage. The power records were maintained by [the utility provider] in the ordinary course of business. They do not identify any activities of Kluss. On a comparative basis they may demonstrate that the power use at the Kluss home is greater or lesser than similar houses or at similar times or that the power use has increased or decreased at different times. The information does not provide any intimate details of Kluss's life, identify his friends or political and business associates, nor does it provide or complete a 'virtual current biography.' The power records, unlike telephone or bank records, do not reveal discrete information about Kluss's activities. High power usage may be caused by any one of numerous factors: hot tubs, arc welders, poor

insulation, ceramic or pottery kilns, or indoor gardening under artificial lights.

*State v. Kluss, supra,* 867 P.2d at 254.

Even if we assume that defendants held a subjective expectation of privacy in the utility records, we view the court's rationale in *Kluss* as persuasive in concluding that, under the Colorado constitution, society does not view this expectation of privacy as a reasonable one. *See also People v. Beckstrom, supra.* We find further support for this conclusion in the trial court's comment, which defendants do not challenge on appeal, that, unlike telephone and bank records, utility records can be obtained by other members of the public such as real estate salespersons or a prospective purchaser of a home. Therefore, the records are not protected from disclosure by Colo. Const. art. II, §§ 7 and 25.

■ Finally, we decline to adopt the "articulable suspicion" test posited by defendants based upon the decision of the supreme court of Washington in *In re Request of Rosier,* 105 Wash.2d 606, 717 P.2d 1353 (Wash.1986). In that case, the court concluded that, pursuant to a state statute, law enforcement officers must have an articulable suspicion that a crime has been committed before making a request for utility records.

Aside from the fact that the *Rosier* court was interpreting a statute, we find no basis for superimposing this requirement upon the test enunciated by our supreme court under its prior decisions. *See People v. Sporleder, supra.*

Based upon the foregoing resolution of defendants' constitutional claim, it is unnecessary to address the prosecution's contention that Dunkin lacks standing to assert any constitutional violation.

## II.

■ We also disagree with defendants' next contention that, even if we conclude that the utility records were obtained legally, the affidavit in support of the search warrant does not establish probable cause to search the residence.

■ In determining whether a warrant should issue, the magistrate need only decide

whether, given all of the circumstances set forth in the affidavit, there is a fair probability that contraband or evidence of a crime will be found in a particular place. *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); *People v. Abeyta*, 795 P.2d 1324 (Colo.1990). In this connection, due consideration should also be given to a law enforcement officer's experience and training in determining the significance of the officer's observations relevant to probable cause set forth in the affidavit. *Bartley v. People*, 817 P.2d 1029 (Colo.1991).

 Our duty as a reviewing court is to determine whether the magistrate had a substantial basis for concluding that probable cause existed. *People v. Leftwich*, 869 P.2d 1260 (Colo.1994). In this review, a magistrate's determination of probable cause is entitled to great deference and any doubts must be resolved in favor of that determination because of the constitutional preference for investigating officers to obtain warrants in lieu of pursuing some basis for warrantless searches. *See People v. Leftwich, supra; see also People v. Abeyta, supra; People v. Hill,* 690 P.2d 856 (Colo.1984).

Here, the property at issue consists of a large residence containing living quarters in the rear and adjacent storage sheds. Three separate utility meters had been installed. The structure had originally been constructed to house a retail store as well as living quarters.

The challenged affidavit recites that a deputy sheriff had reported to an investigator that "something strange was going on" at the residence because the only time the deputy observed any activity was when a vehicle pulled into the driveway in the morning and left about an hour later. According to the affidavit, it did not appear to this deputy that anyone was living in the structure.

The investigator interviewed a second deputy who lived near the residence. This deputy also noted that certain cars came to the residence in the morning and then left. The deputy also indicated that "there are heavy curtains covering the windows" and that, based upon the absence of lights at night, no one appeared to be living in the residence. However, the deputy also stated that he was not certain about whether the residence was occupied because of the number of tracks in the driveway.

The investigator contacted a representative of the rural electrical association who furnished information regarding electricity used at the residence, the living quarters, and the adjacent storage sheds for a 15–month period.

This information indicated excessive use of electricity for the residence which did not vary from summer to winter as would be anticipated with the use of electric heat. The meter reader for the association also confirmed that usage at the residence was "well above normal" to the extent that he marked his log to recheck the kilowatt hours in order to ensure that no mistake had been made.

The affidavit reveals that the investigator discussed the foregoing information with a representative of the Drug Enforcement Agency and was advised that possible explanations for the usage would be an illegal drug lab or a marihuana growing operation. The investigator also discussed the information with an investigator for the district attorney's office with 18 years experience in drug enforcement.

This investigator was of the opinion that a marihuana growing operation was the most probable explanation. He explained the heavy curtains as precluding observation of the operation from outside the residence, the periodic occupation of the residence as indicating control of the plant growth, and the use of grow lights and water pumps as requiring heavy usage of electricity. Finally, this investigator pointed to a 4–month growth cycle of planting and harvesting marihuana as fitting a pattern seen in the monthly bills for the residence.

We therefore conclude that, when read in a practical, common sense fashion, the affidavit in this case provided sufficient evidence to establish probable cause to search Smith's residence. *See People v. Ball*, 639 P.2d 1078 (Colo.1982).

## III.

 Defendants finally contend that the trial court erred in rejecting defendants' ve-

racity challenge to the affidavit. Defendants argue that law enforcement officers either intentionally, recklessly, or negligently misstated or omitted information which made the affidavit substantially misleading. As a result, they assert, the magistrate was precluded from reaching a neutral and detached decision regarding the question of probable cause. We disagree.

 If a law enforcement officer includes a false statement in an affidavit intentionally or with reckless disregard for the truth, the statement must be stricken and the remaining allegations must be reviewed to determine whether probable cause exists. *People v. Young,* 785 P.2d 1306 (Colo.1990). However, as pertinent here, if the erroneous statement is the result of the good faith mistake or negligence of an officer-affiant, appropriate sanctions need only be imposed at the discretion of the trial court. *People v. Flores,* 766 P.2d 114 (Colo.1988).

On the other hand, *omissions* of adverse, material facts from an affidavit will only invalidate a search warrant if the affidavit is thereby rendered substantially misleading. *People v. Wilson,* 819 P.2d 510 (Colo. App.1991).

Defendants assert that, although the affidavit conveys the impression that there was something suspicious about the activity, or lack of activity, around the residence, and that no one was living there, two of the deputies at the suppression hearing provided testimony that conflicted with statements they made earlier to the investigating officer. One of the deputies testified that she informed the officer before the affidavit was submitted that there were people who appeared to be living at the house. Another deputy testified that, based on an encounter he had with Dunkin prior to the execution of the search warrant, he believed Dunkin lived at the house. Neither of these facts appeared in the affidavit.

We conclude, that, although there was some inconsistency in the testimony and the affidavit regarding whether anyone was living at the residence, the trial court correctly determined that such inconsistencies were not sufficient to establish either that the officer or the informants made false statements intentionally or that such statements were made with a reckless disregard for the truth. Indeed, the statements attributed to one of the deputies in the affidavit indicated that he was not certain whether the residence was occupied.

Defendants also assert that it was at least negligent, if not a reckless disregard for the truth, on the part of either the investigator or the affiant not to reveal in the affidavit alternative legal explanations for the high consumption of electricity.

We conclude, however, that the failure to list every possible reason for the high consumption is not a material omission which upon a common sense reading of the affidavit renders it substantially misleading. Given the other facts and observations stated in the affidavit, explaining the probable usage as connected to the growth of marihuana was warranted.

Therefore, we conclude the trial court did not err in failing to strike the challenged statements from the affidavit, and it properly denied the motion to suppress.

Accordingly, the judgments of conviction against defendants are affirmed.

HUME and CASEBOLT, JJ., concur.