The **PEOPLE** of the State of Colorado, Plaintiff–Appellant,

v.

Timothy **FORTUNE**, Defendant–Appellee.

No. 96SA345.

Supreme Court of Colorado, En Banc.

Jan. 13, 1997.

1342

John W. Suthers, District Attorney, Fourth Judicial District, Elizabeth Anne Kirkman, Deputy District Attorney, Gordon R. Denison, Colorado Springs, for Plaintiff–Appellant.

Elvin L. Gentry, P.C., Elvin L. Gentry, Marla Prudek, Colorado Springs, for Defendant–Appellee.

Justice SCOTT delivered the Opinion of the Court.

In this interlocutory appeal, we review an order of the trial court suppressing evidence obtained pursuant to a search warrant. The affidavit supporting the search warrant did not include information related to the child-victim's background prior to the incident in question. The trial court concluded that the warrant was not supported by probable cause because the affidavit, which omitted background information relating to the child-victim's credibility without corroboration of his allegations, was substantially misleading. Because the information omitted was not material and because statements of a victim generally need not be corroborated to support a finding of probable cause, we reverse the trial court's ruling and remand the case for further proceedings.

## I.

On February 10, 1996, eleven-year-old C.S. told his father that an adult friend and neighbor, defendant Timothy Fortune, had sexually abused him. The father called the Colorado Springs Police Department to report his son's allegations. On February 11, 1996, Officer David Hagan arrived at the home of C.S. and undertook a preliminary investigation by interviewing both C.S. and his father.

C.S. explained that he had been spending time at defendant's house playing cards and watching television for approximately six months and that each time he was there, defendant would bring out pornographic magazines and videos. C.S. also described in detail several instances of sexual activity by the defendant, either in front of or with C.S. C.S. also told Officer Hagan that, while watching the Superbowl with several other boys at defendant's house, the boys had "mooned" the television. After the other boys had left, defendant encouraged C.S. to drop his pants and "moon" the television again. C.S. stated that, when he did so, defendant stared at his genitals.

On February 12, 1996, Detective Richard Hunt and a victim's advocate conducted a follow-up interview with C.S. and his parents at the Children's Advocacy Center in Colorado Springs. C.S. repeated, but with more detail, the same information he had given to his father and to Officer Hagan. C.S. also provided the names of the three other boys who had been at defendant's house during the Superbowl and stated that they would also know about the pornographic magazines and the mooning of the television during the Superbowl. C.S. did not claim that the other boys had been sexually assaulted.

The trial court found that during these interviews, C.S.'s father voluntarily informed the police officers that because C.S. was suf-

fering from a detachment and abandonment disorder, he was capable of fabrication, that he could be a good actor or a con artist, and that he could make up stories. However, the father also stated that, "I don't believe [C.S.] is fabricating this story."[1] The father further informed the officers that C.S. was in therapy due to his behavioral problems.

In preparing the affidavit in support of the search warrant, Detective Hunt did not include the background information provided by the father relating to C.S.'s past behavioral problems and his ability to fabricate stories. Also, because Detective Hunt prepared the affidavit immediately after the interview with C.S. and his parents on February 12th, it did not contain any information from the other boys who were present at various times with C.S. at defendant's house. That evening, Detective Hunt presented the affidavit to a judge who signed it at approximately 8:00 p.m. The warrant was executed immediately and the police seized physical evidence that corroborated the statements of C.S. Defendant was arrested and charged with sexual assault on a child, attempted sexual assault on a child, and obscenity.

During a suppression hearing held in August 1996, Detective Hunt testified that he hadn't thought it necessary or relevant at the time to include in the affidavit the information regarding C.S.'s history and his father's comments that C.S. had the capacity to make up stories because he did not believe the father was trying to warn him about any credibility issues. Rather, the detective testified that the father "was trying to give him an accurate assessment of [C.S] and his be-

havioral problems." Furthermore, Detective Hunt stated that the impact of the father's statements was minimalized by his subsequent qualification that, although C.S. had lied in the past, he didn't think C.S. was fabricating this story.[2]

The trial court nevertheless determined that the detective's omissions from the affidavit rendered the affidavit substantially misleading because they directly related to the credibility of the victim and were therefore relevant. The trial court stated: "If all the information was in the warrant, including this info [sic], this Court would not have signed the warrant." Thus, the court granted the defendant's motion to suppress all evidence found during the execution of the search warrant.

This interlocutory appeal followed. Because we conclude that the omissions as to the background of the child victim did not render the affidavit substantially misleading, corroboration of the victim's statements was not necessary to support a finding of probable cause, and the trial court's findings are not supported by the record, we reverse and remand for further proceedings consistent with this opinion.

## II.

■ The Fourth Amendment to the United States Constitution and article II, section 7 of the Colorado Constitution prohibit the issuance of a search warrant except upon probable cause supported by oath or affirmation particularly describing the place to be searched or the objects to be seized.[3] Proba-

---

1. The record reveals that upon checking the police department's victim records, the officers learned that there had been no record of C.S. as a victim or as a runaway.

2. In response to a question at the suppression hearing why he did not include the information in the affidavit regarding C.S.'s capacity to fabricate stories, Detective Hunt stated that:

 Because someone tells a lie once about something, that doesn't mean they necessarily lie about everything. With [the father's] statements, [he] is probably one of the people that knows [C.S.] better than anyone else in the world. He was very open and I felt being very honest with me about [C.S.'s] background, his behavioral problems, and [C.S.'s] credibility, and in that sense of being very candid, very

open, he was presenting to me all of the information. That, you know, he's got these concerns about [C.S.] but even with all this, I believed [C.S.] 100 percent.

I wouldn't be here talking to you. So, he believed [C.S.] even knowing [C.S.] intimately. He believed what [C.S.] was telling him was the truth.

3. The Fourth Amendment to the United States Constitution provides: "The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches ... shall not be violated; and ... no warrant shall issue, but upon probable cause, supported by oath or affirmation...." Article II, § 7 of the Colorado Constitution provides: "The people shall be secure in their persons, papers, home and effects,

ble cause exists when an affidavit supporting a search warrant alleges facts sufficient for a person of reasonable caution to believe that contraband or material evidence is located in the place to be searched. *People v. Pate,* 878 P.2d 685, 689 (Colo.1994).

■ The omission of material facts known to the affiant at the time the affidavit was executed may cause statements within the affidavit to be so misleading that a finding of probable cause based on such statements may be deemed erroneous. *People v. Winden,* 689 P.2d 578, 583 (Colo.1984). An omitted fact is material for purposes of vitiating an entire affidavit only if its omission rendered the affidavit substantially misleading to the judge who issued the warrant. *People v. Unruh,* 713 P.2d 370, 381 (Colo. 1986). However, there is no requirement that all steps taken, all information obtained, and all statements made by witnesses during the course of an investigation be described fully and in chronological order in an affidavit. Finally, we have held that doubts must be resolved in favor of a magistrate's determination of probable cause in order to avoid creating a climate in which police resort to warrantless searches rather than obtaining a warrant before conducting a search. *People v. Abeyta,* 795 P.2d 1324, 1327 (Colo.1990).

### III.

■ Here, the trial court determined that the omissions from the affidavit relating to the troubled history and behavioral problems of C.S. and the lack of corroboration of the boy's report indicated a lack of trustworthiness, rendering the affidavit substantially misleading and, therefore, probable cause was lacking. We disagree.

### A.

■ In the context of probable cause, the type of showing necessary to establish the trustworthiness of the information supporting the search or arrest will vary with the source of the information. *People v. Henry,* 631 P.2d 1122, 1127 (Colo.1981). For example, when the information originates from an anonymous informer, or a person from the criminal environment acting out of self-interest, there must be evidence of adequate circumstances to justify the officer's belief in the informer's credibility or the reliability of his information. *Id.; see also United States v. Harris,* 403 U.S. 573, 579, 91 S.Ct. 2075, 2079–80, 29 L.Ed.2d 723 (1971).

■ However, it is generally agreed that a similar showing of trustworthiness or credibility is not needed when the information comes from an ordinary citizen. *Henry,* 631 P.2d at 1127, 2 Wayne R. LaFave, *Search and Seizure* § 3.4, at 205 (3d ed. 1996). When the source of the information is a citizen-informer who witnessed a crime and is identified, the citizen's information is *presumed* to be reliable and the prosecution is not required to establish either credibility of the citizen or the reliability of his information. *Henry,* 631 P.2d at 1127; *People v. Hubbard,* 184 Colo. 225, 228–29, 519 P.2d 951, 953 (1974). Importantly, the citizen-witness rule applies equally to a citizen-victim. "It is simply unreasonable to presume, in the absence of any contrary evidence, that the ordinary citizen who fortuitously becomes a victim of a crime is likely to offer false or untrustworthy information to the police." *Henry,* 631 P.2d at 1127. Thus, corroboration of a victim's report is generally not necessary when submitting an affidavit in support of a search warrant.[4]

Defendant nevertheless argues that the trial court properly concluded that "contrary evidence" existed as to the lack of credibility or trustworthiness of C.S. and, therefore, such information, if included in the affidavit,

---

from unreasonable searches and seizures; and no warrant to search any place … shall issue … without probable cause."

**4.** Other jurisdictions have similarly held that corroboration is not necessary when the report is made by a citizen observer or victim. *See, e.g., United States v. Decoteau,* 932 F.2d 1205 (7th Cir.1991); *People v. Schulle,* 51 Cal.App.3d 809, 124 Cal.Rptr. 585 (1975); *State v. Sivri,* 231 Conn. 115, 646 A.2d 169 (1994); *Hooks v. State,* 416 A.2d 189 (Del.1980); *State v. Drake,* 224 N.W.2d 476 (Iowa 1974); *State v. Perrigo,* 640 A.2d 1074 (Me.1994); *State v. Steffes,* 269 Mont. 214, 887 P.2d 1196 (1994); *State v. Gilreath,* 215 Neb. 466, 339 N.W.2d 288 (1983); *State v. Haron,* 88 S.D. 397, 220 N.W.2d 829 (1974); *Allison v. State,* 62 Wis.2d 14, 214 N.W.2d 437 (1974).

would have affected the issuing magistrate's determination of probable cause under the warrant. We disagree that this information was material such that, by including it in the affidavit, the issuing magistrate would have found probable cause to be lacking.

 Probable cause depends upon probabilities and not certainties, and upon knowledge grounded in the practical considerations of every day life on which reasonable and prudent persons act. *People v. Washington,* 865 P.2d 145, 147 (Colo.1994); *People v. Unruh,* 713 P.2d 370, 381 (Colo. 1986). Thus, a totality of the circumstances analysis has traditionally informed probable cause determinations. *Illinois v. Gates,* 462 U.S. 213, 230–31, 103 S.Ct. 2317, 2328–29, 76 L.Ed.2d 527 (1983); *People v. Pannebaker,* 714 P.2d 904, 907 (Colo.1986). In applying the totality of the circumstances test, questions of veracity remain factors to be considered in the probable cause equation; however, courts have generally proceeded as if veracity may be assumed when information comes from the victim of or a witness to criminal activity. *See generally* LaFave, *Search and Seizure,* at 205.

Here, the trial court determined that the information omitted from the affidavit would have affected the trial court's probable cause determination. Specifically, the court found:

> The affiant was aware that the victim had made a false allegation of physical abuse to DSS; that the victim was described by his own father as being a good actor, as a good con artist, is capable of fabrication; that the victim had been in the custody of DSS and therapy; that the victim has been in Cleo Wallace; has behavioral problems; that the victim made statements in regard to being at a poker game where there was a thousand dollars used of real money.

. . . .

Also, other boys did not corroborate the victim's statements and there was no corroboration.

. . . .

One of the seven or eight omitted categories by themselves that I went through is not very significant, but you put all these seven or eight total together that rises to several of substantially misleading the Judge who signed the warrants.

If all the information was in the warrant, including this info [sic], *this Court* would not have signed the warrant.

(Emphasis added).

 We conclude that while there existed some evidence of C.S.'s troubled past, that evidence, in light of the totality of the circumstances, would not have significantly affected a probable cause determination.[5] Further, the information omitted from the affidavit did not constitute "contrary evidence" that would require a showing of the victim-informant's credibility or corroboration of the victim's account.

First, although the father indicated that C.S. had the ability to fabricate stories, that statement was mitigated by his statement immediately thereafter that he didn't think C.S. fabricated this story. Indeed, the father's opinion is supported by the fact that he chose to call the police and report the alleged incidents. Nevertheless, the court did not consider significant the fact that the father, who had offered the information about his son's history, did not think C.S. was lying.[6] The court did afford great weight to the fact that C.S. had behavioral problems and had been in therapy. However, such a history, by itself, does not indicate a lack of veracity or trustworthiness.

---

**5.** We also note that the trial court erroneously based its conclusion on whether *it* would have signed the warrant, rather than on whether the issuing magistrate would have signed the warrant. *See Winden,* 689 P.2d at 583 (stating that an omitted fact was material for purposes of vitiating an entire affidavit "only if its omission rendered the affidavit substantially misleading *to the judge who issued the warrant*") (emphasis added). Although the trial court may have impli-

edly ruled that the issuing magistrate would not have found probable cause, it did not so state.

**6.** C.S.'s father testified during the suppression hearing that his statements regarding his son's troubled past were not intended to warn the police about C.S.'s credibility but rather were intended to give the officers a "complete background" to "better enable him to do an interview with [C.S.]."

Second, although the court states that C.S. had made "false allegations of physical abuse" in the past, that statement is not supported by the evidence. The father admitted that he had "lightly" backhanded C.S. and that, as a result, C.S. called the Department of Social Services. Although C.S. attempted to make the incident look more serious by coloring around his eye with a crayon, the allegation that his father hit him was, in substance, true. In our view, a child's *exaggeration* of an actual incidence of physical abuse, as opposed to its complete fabrication, logically should not undercut his allegations of sexual abuse.

Third and importantly, there is no evidence in the record that C.S. had ever previously made a false allegation of sexual abuse;[7] therefore, there was no reason for his father, Officer Hagan, Detective Hunt, or even the issuing magistrate to question his credibility. *See Henry*, 631 P.2d at 1127 ("When the source of the information is a citizen informer ... the citizen's information is presumed to be reliable and the prosecution is not required to establish either the credibility of the citizen or the reliability of his information."); LaFave, *Search and Seizure*, at 208 (quoting *People v. Bevins*, 6 Cal.App.3d 421, 85 Cal.Rptr. 876 (1970)) ("A citizen who purports to be a victim of or to have witnessed a crime is a reliable informant even though his reliability has not theretofore been proved or tested.").

Similarly, it is no reflection on C.S.'s credibility that he stated there was $1,000 of real money used in a poker game at defendant's house. There is no evidence this statement is false. Furthermore, even if the actual amount of money did not total $1,000 or it was not real, a young boy who doesn't accurately assess exact or minute detail such as the amount or the authenticity of a stack of bills cannot reasonably be assumed to fabricate or misrepresent the existence or use of money. Clearly, this lack of financial acumen has no bearing on whether C.S. would fabricate a story regarding sexual abuse. Indeed, in our view, none of the information omitted directly contradicted or called into question the specific allegation made by C.S. and therefore did not constitute "contrary evidence" or render the affidavit substantially misleading.

Thus, because no significant "contrary evidence" was presented to refute the credibility of C.S., corroboration of his allegations was not necessary. *See Henry*, 631 P.2d at 1127. Nevertheless, the trial court placed great emphasis on the fact that the other boys did not corroborate C.S.'s story and implied that such information should have been included in the affidavit. However, the record reveals that Officer Hunt was not aware of the information gained from the interviews with the three boys and therefore was unable to include it, whatever the result, in the affidavit. *See Winden*, 689 P.2d at 583 (the omission of material facts *known to the affiant at the time the affidavit was executed* may cause statements within the affidavit to be so misleading that a finding of probable cause is deemed erroneous).

Also, the court was incorrect in stating that none of the boys was able to corroborate C.S.'s story. One boy did reveal that he saw the magazines and confirmed the incident while watching the Superbowl. Thus, although corroboration was not necessary because no "contrary evidence" existed, the trial court's findings on this point are again not supported by the evidence. *People v. Sutherland*, 886 P.2d 681, 686 (Colo.1994).[8]

### B.

Finally, we note that Detective Hunt testified that he intentionally left out information

---

7. Indeed, all other statements made by C.S. to the officers proved to be true. For example, C.S. reported to the officers that he had been exposed to sexual activity in the past by a male babysitter and his father confirmed that this story was true. Also, C.S. stated that he was often "held down" during therapy. The father corroborated this story and explained that an effective method of therapy for C.S. involved physical restraint.

8. We mention this error in the trial court's ruling because the record demonstrates that Detective Hunt was unaware whether the boys did or did not corroborate C.S.'s story at the time the affidavit was executed; however, for the same reason, the fact of their corroboration should not and is not a factor in our consideration today as to whether probable cause, in fact, existed.

regarding C.S.'s history. Based on that testimony, the trial court ruled that the omission was the product of an intentional effort to mislead the magistrate. *See People v. Winden*, 689 P.2d 578, 583 (Colo.1984) (omissions that are the product of an intentional effort to mislead the issuing judge or magistrate normally justified more severe sanctions than errors occurring for other reasons).[9] This conclusion, however, is also not supported in the record.

Detective Hunt testified that he intended to leave the information out of the affidavit; however, no evidence in the record reveals that he deliberately attempted to mislead the magistrate by the omission. To the contrary, Detective Hunt specifically stated that he omitted the information because he did not feel that C.S.'s behavioral problems and psychological treatment were relevant for the purposes of the search warrant. Although we recognize that an accurate determination by the trial court that Detective Hunt intended to mislead the magistrate by omitting the information would compel a suppression order, *see Winden*, 689 P.2d at 583, the evidence in the record here does not support such a finding.

## IV.

Accordingly, we reverse the trial court's suppression order because we cannot say based on the statements set forth, as well as those omitted, that the issuing magistrate's finding of probable cause is not supported by the record. The information omitted from the affidavit did not render it substantially misleading because it did not contradict the allegations made by C.S., a citizen-victim. Thus, contrary to the trial court's determination, corroboration was not necessary, and the trial court erred in determining otherwise.

KIRSHBAUM, J., dissents.

LOHR, J., joins in the dissent.

9. The trial court stated:
 Omissions that are the product of intentional efforts to mislead the issuing Judge or Magistrate, a reckless disregard of no [sic] material facts, would normally justify more severe sanctions that [sic] errors occurring for other rea-

Justice KIRSHBAUM dissenting:

In this case the trial court, concluding that an affidavit submitted in support of a search warrant was "substantially misleading" and that the police officer submitting the warrant intentionally omitted relevant information concerning the credibility of a victim informant, entered an order prohibiting the introduction of certain evidence seized pursuant to the warrant. The majority reverses that order on the basis of its view that statements of a victim generally need not be corroborated before they are repeated in an affidavit, maj. op. at 1343; its conclusions that the omitted evidence "would not have significantly affected" the issuing court's probable cause determination, maj. op. at 1346, and did not constitute " 'contrary evidence' that would require a showing of the victim-informant's credibility or corroboration of the victim's account," maj. op. at 1346; and its determination that the trial court's finding that the officer intentionally omitted relevant information from the affidavit is "not supported by the record." Maj. op. at 1348.[1] Because I find the record fully supportive of the trial court's critical factual determinations and believe the majority opinion does not appropriately apply well-established rules of law respecting the adequacy of affidavits submitted in support of requests for search warrants, I respectfully dissent.

## A

The majority has appropriately indicated that the issue in this case requires consideration of information known to a police officer, Detective Hunt, and omitted by Hunt from an affidavit he prepared in support of an application for the issuance of a search warrant. In gathering information concerning a sexual assault allegedly committed by the defendant, Timothy Fortune, on the then eleven-year-old C.S., Hunt and Officer David Hagan interviewed C.S. and C.S.'s father on

sons and in this case it was one, an intentional leaving out of this information by Detective Hunt as opposed to an oversight.

1. The majority's description of this finding as a "conclusion" is, in my view, erroneous.

two occasions. With respect to the information supplied by C.S.'s father, the affidavit in four sentences summarizes statements made by the father describing comments made to him by C.S. As the majority notes, the affidavit does not refer to statements by the father that C.S. was suffering from a "detachment and abandonment disorder"; that in the father's opinion C.S. was capable of fabrication, was a "con-artist" and a "good actor"; and that C.S. could make up stories at times. Maj. op. at 1344. In addition, the record reveals that the father informed the officers that C.S. had severe behavioral problems requiring extensive therapy and that C.S. had at one time been treated for over 400 days at an inpatient hospital for such behavioral problems. Furthermore, the trial court found that C.S. "had made false allegations of physical abuse before," and the People have not disputed that factual finding.[2]

B

In *People v. Sundermeyer,* 769 P.2d 499, 501 (Colo.1989), we observed that the test for determining whether the omission of information known to the affiant at the time an affidavit for a search warrant is executed is "whether the omitted facts rendered the affidavit substantially misleading to the judge who issued the warrant." *See also People v. Unruh,* 713 P.2d 370, 381 (Colo.1986); *People v. Winden,* 689 P.2d 578, 583 (Colo.1984). In *Sundermeyer,* we concluded, as had the trial court, that relevant facts had been omitted from an affidavit, but reversed the trial court's suppression order because no question was raised "as to the truth or the suffi-

ciency of the facts set forth in the affidavit to establish probable cause" and because the omitted facts "were not adverse and ... merely buttressed the facts which supported the issuance of the warrant." *Id.* In sharp contrast to the circumstances present in *Sundermeyer,* the omitted facts here do cast doubt on the truthfulness and sufficiency of the facts contained in Hunt's affidavit.

In his testimony at the suppression hearing and in his written report Hunt himself recognized that all of the omitted information was relevant to the question of the credibility of C.S.'s statements. Hunt candidly testified that he "heard what I felt to be equal factors on both sides" in consciously determining to omit the disputed facts from his affidavit.[3] Determinations of the veracity of information contained in an affidavit for a warrant are to be made by the issuing judge on the basis of "a complete factual predicate." *Winden,* 689 P.2d at 582. The magistrate must be given "sufficient facts to permit ... [the] exercise [of] real discretion." *Id.* The screening process consciously adopted by Hunt prevented the issuing judge in this case from exercising such discretion.

The majority refers to our decision in *People v. Abeyta,* 795 P.2d 1324, 1327 (Colo. 1990), for the principle that doubts concerning the sufficiency of facts contained in an affidavit to support a judicial determination that the affidavit establishes probable cause should be resolved in favor of such determination "in order to avoid creating a climate in which police resort to warrantless searches rather than obtaining a warrant before conducting a search." Maj. op. at 1345. In this

2. Detective Hunt's police report contains the following paragraph:

[The father] again was very candid about [C.S.]'s nature and said [C.S.] is capable of fabrication and can be a.very good actor. [The father] described an incident a couple of years ago where [C.S.] had set [the father] up with the Department of Social Services. There had been an episode where [the father] had lightly backhanded [C.S.] in the face and then [C.S.] had used a Crayola to mark his eye up. The next morning it was reported and the Department of Social Services got involved. Later, however, [C.S.] told his counselor at school about making the whole story up. [The father] said having that in mind about [C.S.], he would not be making this report about his suspicions

and what [C.S.] has said about Timothy Fortune unless he thought it was true.

[The father] and [his wife] did not have any further relevant information at that time and the interview was concluded....

In view of the People's acceptance of the trial court's finding that C.S. falsely reported physical abuse, I do not agree with the majority's conclusion that the record does not support that finding.

3. Hunt's supervisor testified that the omitted facts were relevant to the credibility of C.S. and C.S.'s father testified that he disclosed these facts to the officers because he believed they would help the officer to make "accurate assumption[s] and a proper report."

case the trial court found the affidavit insufficient because it was misleading. The policy expressed in *Abeyta* is in no manner undercut by the caveat that affidavits submitted in support of search warrants may not be consciously constructed in such fashion as to mislead the issuing judicial officer by means of the omission of relevant facts.

## C

The majority emphasizes that "corroboration" of the victim's statements was not necessary in this case. Maj. op. at 1343, 1344, 1345, 1346, 1347, 1348. The majority also invokes principles developed in citizen-informant cases in support of its conclusion that the trial court erred. In my view, questions of "corroboration" are at best subsidiary to the test applied by the trial court: whether the affidavit was so misleading as to render improper the issuing judge's probable cause determination. *United States v. Leon*, 468 U.S. 897, 923, 104 S.Ct. 3405, 3420–21, 82 L.Ed.2d 677 (1984); *Unruh*, 713 P.2d at 380–81; *Winden*, 689 P.2d at 583. Accordingly, I find the citizen-informant cases referenced by the majority to be of little assistance in determining the propriety of the trial court's application of this standard in this case.

We have long recognized that, absent contrary evidentiary indications, factual reports of citizens who witness or are victims of alleged criminal conduct are presumed to be true. *People v. Rueda*, 649 P.2d 1106, 1109 (Colo.1982); *People v. Ball*, 639 P.2d 1078, 1082 (Colo.1982); *People v. Henry*, 631 P.2d 1122, 1127 (Colo.1981); *People v. Hubbard*, 184 Colo. 225, 228–29, 519 P.2d 951, 953 (1974); *People v. Glaubman*, 175 Colo. 41, 50, 485 P.2d 711, 717 (1971). *See* 2 Wayne R. LaFave, *Search & Seizure* § 3.4(a) (3d ed. 1996) ("when an average citizen tenders information to the police, the police should be permitted to assume that they are dealing with a credible person in the absence of special circumstances suggesting that such might not be the case.... The ... modern view ... is that as a general proposition any person purporting to be a crime victim or witness may be presumed reliable, though the police must remain alert to the existence of any circumstances which would make that presumption inoperative in a particular case.") (footnotes omitted). For reasons of sound public policy, factual reports of anonymous or confidential informants are deemed unreliable in the absence of factual evidence establishing the reliability of the reported facts. *Henry*, 631 P.2d at 1127; *Glaubman*, 175 Colo. at 51, 485 P.2d at 716–17; *People v. Kurland*, 28 Cal.3d 376, 168 Cal.Rptr. 667, 618 P.2d 213, 223 (1980); *see United States v. Harris*, 403 U.S. 573, 579, 91 S.Ct. 2075, 2079–80, 29 L.Ed.2d 723 (1971). When circumstances indicate that a citizen-informant's information may be unreliable, just as when facts reported by an anonymous or confidential informer are presumed to be unreliable, courts must determine whether probable cause has been established by considering the totality of the circumstances. *Illinois v. Gates*, 462 U.S. 213, 230–31, 103 S.Ct. 2317, 2328–29, 76 L.Ed.2d 527 (1983).

The majority suggests that because C.S. is a citizen-informant, whose factual recitations are presumed true, no corroboration is necessary here. Maj. op. at 1345. The majority also indicates that the evidence omitted from Hunt's affidavit is not "contrary evidence" requiring determination of the reliability of C.S.'s statements. Maj. op. at 1345–1346.[4] However, the issue is not whether corroboration is necessary. Reliability or lack thereof can be established by many methods. *E.g. People v. Pate*, 878 P.2d 685, 689–90 (Colo. 1994) (sufficient detail, corroboration); *People v. Dailey*, 639 P.2d 1068, 1072–73 (Colo. 1982) (sufficient detail, history of reliable information); *People v. Abeyta*, 795 P.2d 1324,

---

4. The majority refers to a statement contained in our opinion in *People v. Henry*, 631 P.2d 1122 (Colo.1981), as the source for the quoted phrase "contrary evidence":

> It is simply unreasonable to presume, in the absence of any contrary evidence, that the ordinary citizen who fortuitously becomes a victim of crime is likely to offer false or untrustworthy information to the police.

*Id.* at 1127. To the extent the majority finds this "contrary evidence" reference to in some fashion narrow the generality of the "special circumstances" exception early articulated by *Glaubman*, I disagree. No formal evidentiary concepts are implied by the exception.

1327 (Colo.1990) (sufficient detail, corroboration); *People v. Arellano,* 791 P.2d 1135, 1138–39 (Colo.1990) (access to reliable information, sufficient detail, history of providing reliable information). The question posed in this case is whether the information known to Hunt when he executed the affidavit was sufficient information to indicate that the presumption of reliability normally accorded to C.S.'s statements is not available here. I agree with the trial court's conclusions that the issue of C.S.'s reliability was raised by the testimony concerning the omitted evidence and that under the totality of the circumstances C.S.'s information, absent a presumption of reliability, did not establish probable cause to believe the defendant had engaged in criminal conduct.

### D

For the foregoing reasons, I respectfully dissent from the majority opinion.

LOHR, J., joins in this dissent.